Joseph LAHR, Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 91–266.

Supreme Court of Wyoming.

Oct. 30, 1992.

Leonard Munker, State Public Defender, Gerald M. Gallivan, Director of the Defender Aid Program, and Monty Barnett, Student Intern for the Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hack, Deputy Atty. Gen., Mary B. Guthrie and Barbara L. Boyer, Sr. Asst. Attys. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

MACY, Chief Justice.

Although the appellant raises a variety of issues, the disposition of this appeal turns upon the sufficiency of the evidence for the crime of larceny by a bailee.

We reverse and remand.

The appellant was brought to trial before a jury for the crime defined by Wyo.Stat. § 6–3–402(b) (1988):

(b) A bailee, a public servant as defined by W.S. 6–5–101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

The property which the appellant converted to his own use, as a bailee, was alleged to be valued at $500 or more; hence, the crime was a felony punishable by imprisonment for not more than ten years and/or a fine of not more than $10,000.

The appellant became qualified to instruct courses in "Basic Trauma Life Support" (BTLS) through his educational and vocational experience. The Alabama Chapter of the American College of Emergency Physicians developed the courses in recognition of a need for good, hands-on continuing education courses for emergency medical technicians and other emergency medical services personnel. Since its beginning in 1982, the BTLS program has become accepted as the standard training course for prehospital trauma care. The interna-

tional BTLS chapter is a nonprofit organization, but its employees are paid salaries. The international organization also intended for the state BTLS chapters to be nonprofit organizations.

A major point of contention in the trial of this case was whether the BTLS program "belonged" to Campbell County Memorial Hospital or to the Wyoming BTLS chapter. The appellant was employed as an emergency medical technician at Memorial Hospital. According to the BTLS manual: "The educational and business mechanisms of the management of BTLS within a given state or province are based on two broad groups: the faculty and providers, and the administrative leaders and course managers." For a state program to qualify for affiliation with the international organization, its faculty, instructors, providers, medical directors, state coordinator, course director, and course coordinator had to all be individuals who were certified to participate in the program. No provision existed for a hospital, such as Memorial Hospital, to "own" such a program. When it became evident that the coal mining companies in and around Gillette were interested in having the BTLS courses available to them, the appellant undertook to form a Wyoming BTLS chapter so that he could teach and coordinate the classes. Memorial Hospital played no role in that process.

Many BTLS courses were taught at the Emergency Medical Services Base, which was owned by Memorial Hospital, while others were taught at mine sites. In any event, it was established at trial that the appellant received over $15,000 from various mining companies and from Memorial Hospital as payment for the courses. The appellant deposited those moneys into a checking account which he opened in the Wyoming BTLS chapter's name. The appellant allegedly received $8,519.43 as a bailee for Memorial Hospital. The remainder of the funds was used to pay the Wyoming BTLS chapter's legitimate expenses, and Memorial Hospital played no role in paying those expenses.

* Chief Justice at time of oral argument.

Memorial Hospital was a "sponsor" of the program, and it provided space for some classes and paid hourly wages to various hospital employees who taught or otherwise participated in the classes. Many users of the BTLS classes perceived the program as being Memorial Hospital's adjunct, though no one was specifically told that was the case, and everyone paid for the classes with checks made payable to the Wyoming BTLS chapter. The appellant billed both the mining companies and Memorial Hospital for the classes and for the instructors' time, received payments in the Wyoming BTLS chapter's name, and deposited the payments into the Wyoming BTLS chapter's checking account. The evidence established that the appellant spent more than half of those funds as though it was the profit of a business he owned.

Our frequently stated standard of review for a sufficiency-of-the-evidence question " 'is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.' " *Broom v. State*, 695 P.2d 640, 642 (Wyo. 1985) (quoting *Harvey v. State*, 596 P.2d 1386, 1387 (Wyo.1979)).

Analysis of the evidence admitted for jury consideration in this particular instance is at first complicated, and then simplified, by the verdict form given to the jury. The verdict form gave the jury three options; i.e., whether the appellant was guilty because he was a "bailee," because he was a "public servant," or because he was "any person entrusted with the control, care or custody of any money or other property":

### VERDICT

We, the Jury, duly empaneled to try the above captioned case, after having well and truly tried this matter, find the defendant, Joseph Lahr:

\_\_\_\_\_ NOT GUILTY of the offense of conversion by a bailee, a public servant or any person entrusted with the control, care or custody of any money or other property valued in excess of $500.00.

 X  GUILTY of the offense of conversion by a bailee, a public servant or any person entrusted with the control, care or custody of any money or other property valued in excess of $500.00.

Likewise, the instruction given to the jurors concerning the elements of the crime followed this same pattern:

### INSTRUCTION NO. 4

The necessary elements of the crime with which the defendant is charged are:

1. On or about April 10, 1989, through January 31, 1991.
2. In Campbell County, Wyoming.
3. The Defendant, Joseph Lahr.
4. While being a bailee or public servant or any person entrusted with the control, care or custody of any money or other property.
5. With intent to steal or deprive the owner of the money or other property.
6. Did convert the money or other property to his own or another's use.
7. With said money or other property valued in excess of $500.00.

If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

This arrangement of the elements of the crime and the verdict form complicate our review because the jury had three options to choose from: (1) bailee, (2) public servant, and (3) any person entrusted. We cannot discern from the verdict which of the three options the jury decided upon. However, this simplifies the answer to the question of the sufficiency of the evidence because, if the evidence were insufficient to establish that the appellant could be any one of the three options, we would be required to reverse the conviction. We hold

that the evidence was insufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt that the appellant was a bailee for Memorial Hospital. Since it is possible the jury found the appellant guilty on that basis, we must reverse.

The statutory definition of a bailee, which accompanies § 6–3–402(b), is simply: " 'Bailee' means a person other than the owner of property who rightfully possesses property." Wyo.Stat. § 6–3–401(a)(i) (1988). That definition of a bailee was the only instruction given to the jury concerning the subject of a bailment. In all pertinent instances, the "owners" of the property (money or services) at issue in this case gave "ownership," not mere possession, of that property to the appellant. *See Wells v. State*, 613 P.2d 201, 204 (Wyo.1980). No express bailment agreement existed between the appellant and anyone who paid money to him. The jury was not instructed on the subject, nor could it reasonably have inferred beyond a reasonable doubt from the evidence that an implied or constructive bailment came into being. *See Cox v. State*, 651 P.2d 1137, 1139 (Wyo.1982).

The classes were organized and taught with Memorial Hospital's full knowledge. The fairest inference which can be drawn from the record is that Memorial Hospital did not like the final result. The appellant simply was not a bailee under the definition of a "bailee" given to the jury. We note that, by this decision, we do not intend to perpetuate the "high stakes sport" of a defendant riding the narrow borderline between larceny by bailee, embezzlement, and false pretenses. 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.8 (1986). *See also Stapleman v. State*, 680 P.2d 73 (Wyo.1984), and *McCann v. United States*, 2 Wyo. 274 (1880). If the facts which were actually presented to the jury in this case were measured against any one of those crimes, the result would be basically the same. If the appellee intended to prove that the appellant was a bailee, the appellee would have achieved that result by producing additional proof and, more importantly, by having additional instructions given to the jury. See *Tennant v. State*, 776 P.2d 761 (Wyo.1989), for an instance when the proof of larceny by a bailee was held to be sufficient (the complex facts were tried to the court rather than to a jury). The law of theft and larceny has been recodified and its language has been simplified, but proof of the specific crime charged must still be made and tested against the beyond-a-reasonable-doubt standard. Wyo.Stat. § 6–3–402(d) (1988). *See also* 2 LAFAVE & SCOTT, SUBSTANTIVE CRIMINAL LAW *supra* at §§ 8.1 to 8.8.

In so holding, we do not condone the appellant's actions or propose to suggest that no remedy at law exists. This matter had, from its inception, the markings of a civil problem between the appellant and Memorial Hospital. The appellee failed in its effort to establish the existence of a crime or of an intent to deceive or defraud. In its brief, the appellee used terms such as "bilk," "over billed," and "double billed," and a great deal of the testimony at trial was along those same lines. Wyoming law does not necessarily define such behavior as being criminal, even though it might be readily subject to a remedy in the civil courts.

Reversed and remanded with instructions that the district court enter a judgment finding the appellant not guilty of the crimes charged.