UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Thomas JOHNSON, Richard Lee
Niedfeldt, and David Lynn Johnson,
Defendants–Appellants.

Nos. 92–3442, 92–3459 and 92–3460.

United States Court of Appeals,
Tenth Circuit.

Dec. 22, 1993.

**1542**

Michael M. Jackson, Topeka, KS, for defendant-appellant Robert Thomas Johnson.

Marilyn M. Trubey, Branch Chief, Federal Public Defender's Office Topeka, KS (Charles D. Anderson, Federal Public Defender, with her on the brief), for defendant-appellant David Lynn Johnson.

Joseph D. Johnson, Topeka, KS, for defendant-appellant Richard Lee Niedfeldt.

Gregory G. Hough, Asst. U.S. Atty., Topeka, KS (Jackie N. Williams, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before: BALDOCK, FEINBERG * and BRORBY, Circuit Judges.

FEINBERG, Circuit Judge:

Defendants Robert Thomas Johnson, Richard Lee Niedfeldt, and David Lynn Johnson appeal from their convictions in the United States District Court for the District of Kansas, Richard D. Rogers, J., stemming from a transaction involving phenyl–2–propanone (P2P, also known as phenylacetone), a Schedule II controlled substance used in the production of amphetamine and methamphetamine. For reasons given below, we affirm the convictions of all three appellants except, with respect to Robert Johnson, for the issues raised by his motion for a new trial; we also vacate the sentences of Robert and David Johnson and remand to the district court for resentencing.

## I. Factual Background

In February 1992, Rayburn Clark, a confidential informant for the Kansas Bureau of Investigation (KBI), told KBI Agent Randall Listrom that the Johnsons had the necessary chemicals to manufacture methamphetamine and were seeking glassware to be used in the manufacturing process.

On March 4, 1992, David Johnson told Clark that rather than obtain the glassware and complete the manufacturing process, he wanted to sell three gallons of "meth oil" (apparently, P2P), and then leave town. On instructions from the KBI, Clark set up a meeting that night between David Johnson and KBI undercover agent Jim Lane, who posed as a potential buyer. At this meeting, Johnson provided Lane with a 140–gram "sample" of P2P. The following day, David Johnson was arrested for an unrelated parole violation. From jail he arranged by telephone for Robert Johnson and "Rick" (presumably, Niedfeldt) to complete the transaction. Robert met Clark that afternoon and

proposed that Clark and Lane meet Robert and Rick and follow them into the countryside. The KBI advised Clark to reject this plan as it appeared too dangerous. David Johnson thereafter instead arranged, again by telephone from jail, to complete the transaction upon his release from jail on March 9.

On that day, Richard Niedfeldt picked up David from jail and drove him, in Niedfeldt's car, to Topeka. They met Lane and Clark in a motel room. After Lane produced $35,000 in cash, David sent Niedfeldt out to the car to retrieve the P2P. David sold Lane three jugs of the chemical, later determined to weigh a total of 11.3 kilograms, for $34,000. As David and Niedfeldt left the room, they were arrested. Niedfeldt, who was carrying the cash in a paper bag, attempted to escape but was tackled by a KBI agent.

Following the arrests, Robert's landlord reported a fire and a strange odor at the farmhouse where Robert had been living. The KBI obtained a warrant to search the premises. A search of the house and adjacent shed yielded mail addressed to Robert and to David Johnson, laboratory equipment, a glassware catalog, and P2P residue.

In March and April 1992, the government proceeded against defendants first by information, then by indictment and, thereafter, by a superseding indictment. In June 1992, a second superseding indictment charged each defendant with one count of conspiracy from March 5 to March 9, 1992, to distribute or possess with intent to distribute P2P (Count One) and with two counts of knowingly distributing or possessing with intent to distribute P2P on March 5 and March 9 (Counts Two and Three, respectively).

Judge Dale E. Saffels presided over the case until June 24, 1992, when it was transferred to Judge Rogers. Trial commenced before Judge Rogers shortly thereafter. In early July 1992, however, a mistrial was declared, and a second jury trial began in September 1992. David Johnson and Niedfeldt testified in their own defense. The former admitted to delivering P2P on March 5 and 9,

* The Honorable Wilfred Feinberg, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1992, but testified that Clark had coerced him into taking part in the deal. Niedfeldt admitted participating in the March 9 transaction, but maintained that he was unaware of the purpose of the meeting until after entering the motel room. Robert Johnson presented no evidence. David Johnson was convicted of all three counts and sentenced to three concurrent terms of life imprisonment; Niedfeldt was convicted only on Counts One and Three and sentenced to two concurrent terms of 168 months; Robert Johnson was convicted only on Count One and sentenced to life imprisonment.

## II. Discussion

### A. Speedy trial

David Johnson argues that his trial violated the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq. (the Act). The district court rejected this argument when defendants raised it on a pretrial motion for dismissal. The Act requires that trial commence within 70 days of the indictment or the defendant's appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1).

David Johnson argues that Judge Rogers, by allowing trial to begin on June 29, 1992, violated the "law of the case" because Judge Saffels had stated earlier that the Act required the case to be heard within 12 days after June 2, 1992. Therefore, according to appellant, Judge Rogers should have dismissed the charges against him. We disagree. Under the law of the case doctrine, " 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *United States v. Monsisvais*, 946 F.2d 114, 115–116 (10th Cir.1991) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 reh'g denied, 462 U.S. 1146, 103 S.Ct. 3131, 77 L.Ed.2d 1381 (1983)). One branch of this doctrine deals with a lower court decision that has been ruled upon by an appellate court; another deals with a decision not so ruled upon. *United States v. Uccio*, 940 F.2d

753, 758 (2d Cir.1991). The first branch is not relevant here, as Judge Saffels' alleged speedy trial ruling did not go before an appellate court before being reconsidered by Judge Rogers. The doctrine's second branch holds that a court should generally adhere to its own prior rulings, but this rule merely guides the court's discretion; it does not limit its power. *Arizona*, 460 U.S. at 618, 103 S.Ct. at 1391. Thus, the doctrine does not bind a judge to follow rulings in the same case by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine. *United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982). Prejudice in this context "refers to a lack of sufficiency of notice and an opportunity to prepare armed with the knowledge that one judge is disregarding the ruling of another." Id. In this case, although David Johnson states that he believed the case would be dismissed, there was in the relevant sense no actual prejudice to his defense to the new speedy trial calculation.

Judge Saffels apparently made his statement at an informal, in-chambers conference of all counsel and did not indicate how he arrived at the 12–day figure. Judge Rogers provided a thorough explanation of his decision that the 70–day period had not expired on June 29, 1992. He found that the 70–day period began on March 12, 1992, the day after the filing of the original indictment.[1] When the trial began on June 29, 1992, 110 days had elapsed since appellants were first indicted, but at least 46 of those days were excludable from calculations under the Act. The district court computed these as follows: The 32 days from April 10 to May 11, the four days from May 15 to 18, and the seven days from June 23 to 29 were excludable because pretrial motions were pending during those periods. See 18 U.S.C. § 3161(h)(1)(F). The one day from June 1 to June 2 was excludable because the trial was then continued upon motion of the defendants and the court found the ends of justice served by the continuance outweighed the

---

1. The date of the indictment is not counted. See *United States v. Anderson*, 902 F.2d 1105, 1108, n. 1 (2d Cir.), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 146 (1990). The district

court also held that the dismissal of the first superseding indictment did not reset the speedy trial clock, since the government never dismissed the original indictment.

value of a speedy trial. See 18 U.S.C. § 3161(h)(8)(A). Finally, the two days of March 24 and June 19 were excludable because the magistrate conducted omnibus and arraignment hearings on those days. See 18 U.S.C. § 3161(h)(1).

We see no error in these calculations. Thus, for speedy trial purposes, a maximum of only 64 nonexcludable days elapsed between the initial indictment and the beginning of trial. We agree with the district court that the Act was not violated.

## B. Motions for acquittal

Each defendant moved for acquittal at the close of the government's case on the ground that the evidence was insufficient to support his conviction for conspiracy under Count One of the second superseding indictment. The court denied the motions.

■ In deciding whether the evidence was sufficient to support the convictions,

[w]e must view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime.

*United States v. White*, 673 F.2d 299, 301–02 (10th Cir.1982). The elements of the crime of conspiracy are 1) agreement with another person to violate the law; 2) knowledge of the essential objectives of the conspiracy; 3) knowing and voluntary involvement; and 4) interdependence among the alleged co-conspirators. *United States v. Evans*, 970 F.2d 663, 668–69 (10th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993).

■ KBI Agent Steve Elsen testified that when David Johnson was in jail, David arranged with Clark to have Robert Johnson and "Rick" attempt to complete the sale of the P2P. Robert proposed to Clark a plan, involving "Rick," for consummating the transaction. Niedfeldt picked up David from jail and drove him, in Niedfeldt's car, to Topeka. The P2P was in Niedfeldt's car. David and Niedfeldt met Lane and Clark in Topeka, where the deal was completed.

When David and Niedfeldt were arrested on leaving the room, Niedfeldt was carrying $34,000 in cash. He attempted to escape but was tackled by a KBI agent. Following the arrests, a search of Robert's home revealed evidence of a drug laboratory.

We find that the evidence set forth above was sufficient to support the convictions of all appellants for the conspiracy charged in Count One.

■ Robert Johnson further argues that "there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy," citing *Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965). Robert's argument is based on the assumption that he could have been found to have "conspired" only with the government informant, Rayburn Clark. This argument does not justify reversal of Robert Johnson's conviction. First, it was apparently not raised below. Second, it ignores the likelihood that the jury found that Robert Johnson had conspired with his brother David, based on the evidence that the two had been setting up a methamphetamine laboratory and the evidence of David Johnson's phone calls to Robert from jail to arrange the aborted meeting with Clark and Lane.

## C. Exclusion of impeachment testimony

■ David Johnson argues that the trial court erred in prohibiting a federal public defender attorney from testifying to impeach the credibility of KBI Agent Lynn Currier Myers IV. David Johnson testified at trial that Rayburn Clark, the KBI informant, had coerced him into selling the P2P to Lane. Government witnesses, however, testified that after David's arrest, he never mentioned that he had been coerced. One such witness was Agent Myers. On cross-examination, David's attorney attempted to impeach Myers's credibility based on allegations that Myers, as a highway patrol officer, had admitted to the media that he engaged in routine pretextual stops and that his actions caused the Kansas City United States Attorney to dismiss a case. Myers denied the allegations. In a further attempt to impeach Myers, David's attorney, a federal public de-

fender, intended to call Mike Harris, also a federal public defender, to testify from his personal knowledge of the dismissed case. The court, however, sustained the government's objection and refused to allow Harris's testimony.

We agree with the trial court's finding that the proffered testimony was "minute" in value. Harris would have testified to a collateral issue not "of consequence to the determination of the action," Fed.R.Evid. 401, and its limited value was "substantially outweighed" by the possibility of confusing the issues or wasting time. Fed.R.Evid. 403.

### D. Sentencing issues

#### 1. *Robert and David Johnson: Sentence under wrong statutory section*

Robert and David Johnson argue that the sentencing court erroneously sentenced them under 21 U.S.C. § 841(b)(1)(A)(viii). Although they failed to raise this issue at sentencing, appellate review is nonetheless appropriate because the trial court committed "plain error resulting in manifest injustice." *United States v. Pace*, 981 F.2d 1123, 1128 (10th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993).

A violation of section 841(b)(1)(A)(viii) is punishable by a prison term of 10 years to life if the defendant has no prior felony drug conviction. The authorized punishment increases to 20 years to life without parole if the defendant has one such conviction and to a mandatory life sentence without parole if the defendant has two or more such convictions. The Johnsons' presentence reports, adopted by the district court, stated that each defendant was subject to a mandatory life sentence under § 841(b)(1)(A)(viii). That subsection applies to drug possession and distribution offenses involving

> 100 grams or more of *methamphetamine*, its salts, isomers, and [sic] salts of its isomers or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers. (Emphasis supplied)

Appellants, however, were convicted of crimes involving P2P, not methamphetamine. The applicable penalty provision for Schedule II controlled substances, such as P2P, that are not explicitly provided for in subsections (A), (B) or (D) of § 841(b)(1) is subsection (C). This subsection sets a maximum term of 20 years for defendants with no prior drug felony convictions and 30 years for defendants with one or more such prior convictions. Accordingly, both Johnsons claim that their life sentences were improper.

The government contends that appellants were convicted of conspiracy to distribute P2P "intending that it be used to manufacture methamphetamine" in violation of 21 U.S.C. § 846 and 841(a)(1). Under 21 U.S.C. § 846, a conspiracy to violate the drug laws bears the same penalty as that prescribed for the object crime. Thus, the government argues, a conviction for conspiracy to distribute P2P with intent that it be used to manufacture methamphetamine carries the same penalty as would conviction for manufacture of methamphetamine. Accordingly, the government says, the Johnsons were properly sentenced under 21 U.S.C. § 841(b)(1)(A)(viii).

We need not address the government's contention that "conspiracy to distribute P2P/Phenylacetone intending that it be used to manufacture methamphetamine" can be considered a crime involving methamphetamine, because the second superseding indictment, upon which appellants were tried, does not mention any such intent. The defendants were charged with possession of methamphetamine only in the original information and with crimes involving P2P "knowing, or having cause to believe, that [it] would be used to manufacture amphetamine or methamphetamine" only in the first superseding indictment, which was dismissed before trial. The second superseding indictment does not mention amphetamine or methamphetamine. In addition, the judge's charge to the jury did not mention those substances either.

In sum, appellants were not tried or convicted for an offense that incorporated the theory that the government now offers to us. Thus, we find the district court erred in applying 21 U.S.C. § 841(b)(1)(A)(viii) for

purposes of sentencing, and we remand for resentencing of Robert and David Johnson under 21 U.S.C. § 841(b)(1)(C).[2]

### 2. Robert Johnson

Robert Johnson argues that his presentence report (PSR) "possibly" contained plain error in the calculation of his prior criminal record. Furthermore, he claims that the PSR overestimated his offense level by applying the wrong conversion factor of the "Drug Equivalency Table" of U.S.S.G. § 2D1.1, application note 10. The PSR applied the conversion factor for P2P "possessed for the purpose of manufacturing methamphetamine." Robert Johnson argues that the PSR should have used the less severe conversion factor applicable for P2P "in any other case." Although he acknowledges that he did not object to the PSR below, he argues that he failed to object because 1) his attorney was constitutionally ineffective and 2) he had no reason to challenge the information in the PSR because it had (erroneously) found that he was subject to a mandatory minimum term of life imprisonment. Because we remand for resentencing, Robert Johnson will again have the opportunity to raise these sentencing issues in the district court. See *United States v. Pace*, 981 F.2d at 1131.

### 3. Richard Niedfeldt

Appellant Niedfeldt, who received a sentence of 168 months, argues that the district court misapplied the Sentencing Guidelines in three respects: 1) failure to adjust his base offense level on the basis of minimal participation under § 3B1.2 of the Guidelines; 2) failure to grant a downward departure under § 4A1.3 on the ground that his criminal history category significantly over-

represented the seriousness of his criminal history; and 3) failure to reduce his offense level for acceptance of responsibility.

 The district court granted Niedfeldt a two-point downward adjustment on the ground that he was a "minor participant," or one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, application note 3. "Minimal participants" are those

> plainly among the least culpable of those involved in the conduct of a group ... [L]ack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

U.S.S.G. § 3B1.2, application note 1. Niedfeldt had the burden of proving by a preponderance of the evidence that he was a minimal participant. See *United States v. Occhipinti*, 998 F.2d 791, 802 (10th Cir.1993). The court's finding that he was a minor participant is a factual finding that cannot be disturbed absent clear error. Id. Although Niedfeldt was not found to have been involved in the conspiracy before the March 9 transaction, he did on that date drive David Johnson to Topeka, retrieve the P2P from the car, and carry the money out of the room. Based on these facts, the district court was justified in finding that Niedfeldt had failed to show his "lack of knowledge or understanding of the scope and structure of the enterprise."

 As for the downward departure based on overrepresentation of the seriousness of his criminal history, the record does not indicate that Niedfeldt raised such an objection below. Niedfeldt now claims that his criminal history consists of minor offenses, alcohol abuse problems, and irrespon-

---

**2.** After argument, Niedfeldt moved to join the Johnsons' arguments against the application of § 841(b)(1)(A)(viii), and we granted the motion. The choice of statutory provision, however, did not affect his sentencing. For a defendant with no prior felony drug conviction, section 841(b)(1)(A)(viii) prescribes a sentence of between 10 years and life, while § 841(b)(1)(C) prescribes a sentence of less than 20 years. Niedfeldt was sentenced to 168 months, or 14 years, which falls within either range. This was the minimum sentence allowable given his of-

fense level and criminal history level (we reject Niedfeldt's challenge to the determination of his offense level in section D.3., below). A statutory sentence trumps a Guidelines sentence only when the two conflict; when, as here, they do not conflict, "the sentence imposed *shall be* the sentence as determined from application of the guidelines." U.S.S.G. § 5G1.1(c) (emphasis added). Thus, regardless of whether he was sentenced under § 841(b)(1)(A)(viii) or § 841(b)(1)(C), Niedfeldt would have received the same sentence.

sible driving, and do not show "a propensity towards serious criminal behavior." According to the record, however, Niedfeldt's only apparent objection at sentencing relating to his prior criminal history was his objection to the inclusion in his PSR of two prior convictions without legal representation. The district court considered this objection and rejected it.

> [I]f the district court interpreted the Guidelines as authorizing departure, but nonetheless chose not to depart, then we would have no jurisdiction to review this discretionary decision.

*United States v. Barrera–Barron,* 996 F.2d 244, 245 (10th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 358, 126 L.Ed.2d 321 (1993). Thus, even if Niedfeldt's objection is generally construed to raise the issue of downward departure based on overrepresentation of criminal history under § 4A1.3 of the Guidelines, this court is powerless to review the sentencing court's ruling because the matter was within that court's discretion.

 Finally, Niedfeldt's acceptance of responsibility claim was properly rejected. The reduction for acceptance of responsibility is appropriate when a defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his offense." U.S.S.G. § 3E1.1. A trial court's denial of this reduction is reviewed under a "clearly erroneous" standard. *United States v. Garcia,* 987 F.2d 1459, 1461 (10th Cir. 1993). In this case, Niedfeldt forced the government to go to trial on all three counts, not only the one on which he was acquitted. Although he admitted his role in the transaction of March 9, 1993, he continued to deny his role in the conspiracy, even after his conviction. Thus, the sentencing court clearly had discretion to deny the reduction sought on the ground of acceptance of responsibility.

### E. *New trial motion*

 Following the jury verdict on September 22, 1992, Robert Johnson moved pro se on December 2, 1992, for a new trial on the basis of ineffective assistance of counsel. After trial, it was discovered that certain confidential files had fallen into the hands of a potential government witness during the trial. Robert Johnson's trial attorney conceded that, through his own negligence, he had allowed a portion of his file to leak out, but he denied that this affected the outcome of the trial. In fact, Russell Lutz, the government witness who had allegedly obtained the file, was never called. The district court denied Johnson's new trial motion as untimely. Robert Johnson argues that the court erred in denying the motion.

We think that under the circumstances the court should have decided the motion on the merits. It is true that a motion for a new trial based on ineffective assistance of counsel must be filed within seven days after the verdict. *United States v. Haddock,* 956 F.2d 1534, 1544–45 (10th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992). But, Johnson's attorney himself stated that he did not realize that he was responsible for the leak of confidential files until the week before Johnson's sentencing, and Johnson himself obviously could not have known about the leak and his attorney's negligence any sooner than that.

Thus, the real issue is whether Johnson's motion should have been considered as a motion based upon newly discovered evidence and therefore timely within the two-year period allowed by Fed.R.Crim.P. 33. We have said that "ineffective assistance of counsel may not serve as the basis for a motion for a new trial on the ground of newly discovered evidence under Rule 33 *where the facts alleged in support of the motion were within the defendant's knowledge at the time of trial.*" *Haddock,* 956 F.2d at 1544 (10th Cir.1992) (emphasis added) (quoting *United States v. Miller,* 869 F.2d 1418, 1421 (10th Cir.1989)). This implies that where the facts relevant to ineffective assistance are *not* known to the defendant until after trial, they may be raised on a "newly discovered evidence" motion under Rule 33. Moreover, we are compelled to remand in any event with respect to Robert Johnson for his resentencing and we see no persuasive reason why the district court should not now decide the issues raised by his new trial motion. We assume that Robert Johnson's counsel on appeal will continue to represent him. We,

of course, express no view on the merits of Johnson's motion.

We have considered all of appellants' arguments (including the supplemental reply brief filed by David Johnson pro se) and conclude, except as set forth above, that they are without merit. We affirm the convictions of David Johnson and Niedfeldt, but vacate David Johnson's sentence and remand to the district court for his resentencing consistent with this opinion. With regard to Robert Johnson, we affirm the conviction, except for the issues raised by his motion for a new trial. We also vacate Robert Johnson's sentence, and remand to the district court for his resentencing consistent with this opinion, should his motion for a new trial be denied.