THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME TAYLOR, Defendant-Appellant.

First District (3rd Division)   No. 1—91—2910

Opinion filed March 30, 1994.

Michael J. Pelletier, Theodore A. Gottfried, and Kim Robert Fawcett, all of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and Michael Bonaguro, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant Jerome Taylor was convicted of delivery of a controlled substance and sentenced to 30 years' imprisonment. On appeal, defendant raises the following issues: (1) the statements of co-conspirators were improperly admitted into evidence, where the State failed to prove a *prima facie* case of a conspiracy; (2) the court improperly restricted argument that defendant was not the individual who delivered the cocaine; (3) defendant was unduly prejudiced by the inflammatory remarks of the prosecution

during closing argument; (4) the trial court failed to inquire into defendant's post-trial claim of ineffective assistance of counsel; and (5) the court sentenced equally culpable offenders to disparate sentences.

On September 1, 1989, Chicago police officer Roosevelt Davis arranged to purchase a kilogram of cocaine from Brian "Bo" Collins. Collins informed Davis that his source had agreed to the offering price of $20,000 and told Davis to meet him at 1:30 p.m. at 441 West 102nd Street. An agent from the Drug Enforcement Administration (DEA), Patrick Collins, agreed to assist with the money. While Davis drove to a gas station parking lot at 103rd and Halsted Streets, a team of agents spread out in the vicinity. Davis and Bo Collins then drove to a house where Bo Collins promised Davis that the cocaine would be delivered if the money was available. Davis informed him that a friend was waiting with the money at a gas station.

At the gas station Bo Collins got into a car with Davis and Agent Collins. Bo then counted the money and said the cocaine would be en route as soon as he contacted his "source." Around 4 p.m. Davis telephoned Bo Collins, who was very excited and said the cocaine was available and he would meet them at the station. Bo Collins then pointed toward a man in the alley and said: "There's the man. \*\*\* There he is." Davis identified this person as Albert Lattimore.

Bo Collins agreed to show Davis the cocaine and they walked eastward down the alley. At Emerald Street, Davis saw Lattimore with defendant Taylor. Lattimore pointed to a car and said it was the police, suggesting they go inside a house to do the deal. Taylor then said, "F- - - it, I'll do it" and he advised Davis to meet him at the end of the alley. Davis then returned to Agent Collins' car and they drove to the end of the alley. As they waited, they both saw defendant Taylor running toward them carrying what looked like a package beneath his shirt. When Davis exited the vehicle, Taylor threw the package on the front seat of the car and asked for the money. At this point, Davis arrested Taylor. Agent Patrick Collins testified and corroborated all of the foregoing statements of Davis.

Special Agent Andrew Banks of the DEA testified that on September 1, 1989, he was surveilling the vicinity when he saw a blue Buick drop off Bo Collins near Emerald Street, who then walked to the gas station where he was to meet Davis and Officer Collins. The Buick later returned with a passenger and pulled up behind Banks' car. While Lattimore exited the vehicle to walk to the gas station, defendant Taylor left the car, carrying a package under his shirt. The parties later stipulated that People's group exhibits 1-A and 1-B were cocaine and cocaine packaging.

Ronald Wagenhofer testified as a senior forensic chemist for the DEA lab in Chicago. After several tests, he concluded that cocaine, about 78% pure grade, was present in the samples tested.

Chicago police officer Steve Worsham testified for the defense that on September 1, 1989, he saw defendant being arrested by the Illinois State Police. After a short foot chase, Lattimore and Taylor were arrested. His report indicated that Brian "Bo" Collins escaped that day. Worsham arrested Lattimore and he later saw defendant in the custody of Officer Davis and Agent Collins.

■ The first issue on appeal concerns the statements of Bo Collins and Lattimore to Officer Davis and Agent Collins. Defendant contends that the testimony regarding these statements was inadmissible hearsay, violative of his sixth amendment right to confrontation. However, the constitutional right to confrontation does not prevent the introduction of all hearsay evidence. (*Dutton v. Evans* (1970), 400 U.S. 74, 80, 27 L. Ed. 2d 213, 222, 91 S. Ct. 210, 215.) In fact, the hearsay rule does not prevent a witness from testifying as to what he has heard. As stated in *Dutton*:

> "From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard." (400 U.S. at 88, 27 L. Ed. 2d at 226, 91 S Ct. at 219.)

The Court in *Dutton* further explained that the so-called "coconspirator hearsay exception"—which allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators—applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise. See also *Lutwak v. United States* (1953), 344 U.S. 604, 97 L. Ed. 593, 73 S. Ct. 481; *Krulewitch v. United States* (1949), 336 U.S. 440, 93 L. Ed. 790, 69 S. Ct. 716.

In addition to the statements being made in the course of the conspiracy, the State must also make an independent, *prima facie* evidentiary showing of a conspiracy between the declarant and the defendant. (*People v. Duckworth* (1989), 180 Ill. App. 3d 792, 536 N.E.2d 469.) In *Duckworth*, statements made by the defendant's niece to an undercover agent were held inadmissible where there was no evidence independent of these statements which would have demonstrated the existence of a conspiracy between the niece and her uncle, the defendant.

A case which is more factually on point is *Bourjaily v. United States* (1987), 483 U.S. 171, 97 L. Ed. 2d 144, 107 S. Ct. 2775, wherein

a co-conspirator informed Federal agents that he had a "gentleman friend" who would distribute the cocaine being sold. Later the sale was to take place in a designated parking lot, where the co-conspirator transferred the cocaine from the informant's car to that of his "friend." The transaction took place as planned and both the co-conspirator and Bourjaily were immediately arrested.

The Supreme Court applied Federal Rule of Evidence 801(d)(2)(E) in finding that the statements of the codefendant against Bourjaily were admissible hearsay under the co-conspirator exception:

> "A statement is not hearsay if
>
> \*\*\*
>
> \*\*\* [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).

The *Bourjaily* court further explained that there existed evidence independent of the alleged hearsay statements which established by a preponderance of the evidence the existence of a conspiracy. In fact, the entire conversation between the co-conspirator and the Federal agent was subsequently corroborated by the actions of Bourjaily, who showed up at the designated time and place to pick up the cocaine.

In considering whether the statements of the co-conspirator were in violation of Bourjaily's sixth amendment rights under the confrontation clause, the Court concluded that since the statements were admissible under the Federal Rules of Evidence, they did not violate the confrontation clause. Citing to *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531, the Court opined:

> "no independent inquiry into reliability is required when the evidence 'falls within a firmly rooted hearsay exception.' [Citation.] We think that the co-conspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence that, under this Court's holding in *Roberts*, a court need not independently inquire into the reliability of such statements." *Bourjaily*, 483 U.S. at 183, 97 L. Ed. 2d at 157, 107 S. Ct. at 2782.

■ In the instant case, defendant posits that the statements admitted pursuant to the hearsay exception lack sufficient assurance of reliability and should not be admitted. Specifically, defendant argues that Bo Collins may have falsely inferred that Lattimore and Taylor were the source for the cocaine when in fact they were mere "tools" brought into the deal as assistants. Further, if Bo Collins knew that Lattimore had a pending cocaine charge against him, he could have more easily created the impression that Lattimore was

the source. Collins had also made a prior comment about how a lot of cars would be around whenever he spoke with Officer Davis. Under these circumstances, defendant argues that Bo Collins' statements were more like arrest statements rather than contemporaneous remarks made in the thick of the conspiracy.

We cannot agree. First, all of the statements made by the co-conspirators were about a present, on-going operation; none were concerning a past fact. Second, there was ample evidence that the co-conspirators had personal knowledge of the on-going conspiracy. Collins designated both the time and the place of the deal. Third, the roles of the co-conspirators, Collins and Lattimore, were instrumental in planning the transactions. Fourth, the statements were spontaneous and against their penal interest. Fifth, the statements linked defendant to the deal. Sixth, defendant was able to freely cross-examine Officer Davis, whose credibility and demeanor were openly viewed by the jury. See *Dutton*, 400 U.S. at 87-89, 27 L. Ed. 2d at 226-27, 91 S. Ct. at 219-20.

For all of the foregoing reasons, we find that the out-of-court statements made by the co-conspirators, Bo Collins and Lattimore, sufficiently established a *prima facie* case of a conspiracy between themselves and defendant.

■ The second issue raised by the defense concerns whether or not defendant was deprived of a fair trial because he was not given a "meaningful opportunity" to present the defense theory that it was really Bo Collins who ran down the alley to deliver the cocaine and not defendant. Defendant claims it was error to prevent him from exploring this theory. However, during trial, defense counsel failed to present any evidence or make any offer of proof concerning this theory. During the cross-examination of Officer Collins, counsel and the trial court discussed the questioning in the judge's chambers.

Defense counsel not only failed to object to the court, but, in fact, defense counsel agreed that he did not wish to pursue this line of cross-examination. As a result, we find that this issue is waived and cannot now be presented for the first time on appeal.

■ We next address defendant's assertion that the prosecution made certain inflammatory and prejudicial remarks in its closing argument. The remarks at issue include: (1) that defendant was the source of the cocaine and he set the price; (2) that defendant was the "ringleader"; (3) that defendant was present because it was "a big-time drug deal"; and (4) that defendant handled the bigger deals.

It is well settled that in order to preserve an issue on appeal, it must be objected to at trial and delineated in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Alleged

improper comments in opening or closing argument must be specifically listed in the post-trial motion. (*People v. Sargent* (1989), 184 Ill. App. 3d 1016, 540 N.E.2d 981.) Only where the errors are so egregious as to deny defendant a fair and impartial trial will they be considered absent proper preservation. *People v. Palmer* (1989), 188 Ill. App. 3d 414, 545 N.E.2d 743.

We do not find that the alleged comments were so strong that an application of the doctrine of *plain error* would warrant their consideration. We find that these remarks have been waived on review.

■ Defendant next argues that he was denied effective assistance of counsel for at least two reasons: (1) the trial judge made more favorable rulings during the first trial and unfavorable rulings during the second; and (2) the trial judge stated that if defendant would forego a second trial and plead guilty, the court would impose a lighter sentence of 15 years; if, however, a second trial occurred, defendant would receive a sentence of 40 years.

There exists no *per se* rule that new counsel must be appointed every time a defendant presents a *pro se* motion for a new trial alleging ineffective assistance of counsel. The United States Supreme Court enunciated a two-part test in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 wherein a defendant must first show (1) that counsel's performance was so deficient it fell below some objective standard of reasonableness; and (2) that the deficient performance so prejudiced defendant as to deprive him of a fair trial. The standard for assessing legal representation is one of objective reasonableness under prevailing professional norms. (*People v. Barrow* (1989), 133 Ill. 2d 226, 549 N.E.2d 240.) In general, matters of trial strategy are within the discretion of the attorney and will not support a claim of ineffective counsel. Defendant filed a *pro se* motion for a new trial, alleging that trial counsel was ineffective because he failed to raise the trial court's lack of impartiality; defendant contends that the trial court was biased against him. Furthermore, defendant requests that we remand this case for an evidentiary hearing so that trial counsel may testify under oath as to his position in this case and so that former trial counsel may testify to her conversation with defendant relaying the comments of the trial judge about a possible plea bargain.

Generally, where a defendant at a post-trial hearing calls into question ineffective assistance of counsel, the trial court should examine the factual issues supporting the defendant's claim. (*People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045.) Where these factual matters indicate a neglect of defendant's case, the appointment of

new counsel is warranted and the trial court must make an independent evaluation of the claim in order to present the matter to the court in a detached, adversarial position. *People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466.

The State argues that this matter may not be remanded pursuant to *People v. Krankel* unless the allegations demonstrate neglect, warranting the appointment of new counsel. In this case, the plea arrangement was allegedly made to defense counsel during a Rule 402 conference with the judge. None of these proceedings have been made part of the record on appeal, nor is there any evidence that the meeting was transcribed. The State further argues that the lack of any record fails to preserve this issue on review and it is therefore waived.

In the alternative, the State argues that the statement made would not support a motion for substitution of judge. It is proper for the trial court to grant leniency to a defendant who has pled guilty. (See *People v. McClendon* (1986), 146 Ill. App. 3d 1004, 497 N.E.2d 849.) There was found no prejudicial error in a case where the trial judge actually commented on an extended term, but where there was nothing to evidence that the trial judge was predisposed to giving an extended term. *People v. Turner* (1989), 186 Ill. App. 3d 849, 542 N.E.2d 935.

Similarly, in the instant case, the trial judge actually imposed a sentence of 30 years, instead of his original position of 40 years. Thus, we find no prejudicial error in the trial court's sentence.

■ Finally, defendant contends that his sentence of 30 years is unfairly disparate with Albert Lattimore's sentence of 18 years for the same crime. Defendant was sentenced under section 401(a)(2)(D) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1401(a)(2)(D)), which imposes a penalty of no less than 15 nor more than 60 years' imprisonment for the delivery of 900 grams or more of any substance containing cocaine.

While defendants who are similarly situated should not receive grossly disparate sentences (*People v. Henne* (1973), 10 Ill. App. 3d 179, 293 N.E.2d 172), disparate sentences may be justified by the relative culpability of the codefendants. (*People v. Johnson* (1978), 59 Ill. App. 3d 640, 375 N.E.2d 1027.) Additionally, it must be noted that absent an abuse of discretion by the trial court a sentence may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Moreover, "equality in sentencing" is not required for all participants in the same criminal act. *People v. Stambor* (1975), 33 Ill. App. 3d 324, 325, 337 N.E.2d 63.

In the instant case, defendant Taylor was the one who actually

put the deal through. Although Bo Collins had previously dealt with Officer Davis in the past, he had only sold him small quantities of cocaine. Only defendant Taylor was able to deliver such a large quantity, a kilogram, and the evidence indicated that there were five more kilograms available. Under these facts we cannot say the trial court's sentence was an abuse of discretion.

For all of the foregoing reasons, the decision of the Cook County circuit court is hereby affirmed.

Affirmed.

RIZZI and CERDA, JJ., concur.