**Charis GILLIAM, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 94–68.

Supreme Court of Wyoming.

Feb. 27, 1995.

Leonard D. Munker, State Public Defender, Deborah Cornia, Appellate Counsel, and Jennifer Cudworth, Asst. Public Defender, representing the appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., and Georgia L. Tibbetts, Asst. Atty. Gen., representing the appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Charis Gilliam appeals from her conviction for conspiracy to deliver marijuana.

We affirm.

### Issues

Appellant presents three issues:

ISSUE I

Was it error to admit the hearsay statements of an alleged co-conspirator without a prima facie showing that a conspiracy existed, of appellant's membership in the conspiracy, or that such statements were made in furtherance of the conspiracy?

ISSUE II

Was the evidence produced at trial insufficient to prove beyond a reasonable doubt all elements of the crime of conspiracy to deliver a controlled substance?

ISSUE III

Was it ... error to deny Appellant the theory of her defense by rejecting submitted instructions?

### Facts

Appellant worked part time for the Central Wyoming Food Coalition (the Coalition) in Casper, doing administrative work. Her husband, Jim Gilliam, worked full time for the Coalition as the warehouse manager.

In March of 1993, a confidential informant, who was working for the Wyoming Division of Criminal Investigation (the DCI), went to the Coalition with another individual in an attempt to purchase marijuana as part of a DCI undercover investigation. The informant met with Appellant and her husband, and they discussed the possible marijuana purchase. At trial, the informant described Appellant's participation in the meeting:

Q. How did it happen that she said anything, what was going on when she entered the convers[at]ion?

A. I was discussing price with her husband, Jim Gilliam, I had told him I had some other pot lined up, but would cost me a lot, and she then told me if I could hang on a couple days, she could probably give me a better price.

Q. What terminology was being used at that point in time, was the word pot or marijuana, how do you know what you were talking about?

A. At the time I believe we used dope.

Q. Did [Appellant] appear to know what you were talking about?

A. Yes.

Appellant's husband instructed the informant to use the term "groceries" as a code word for marijuana and the term "pallet" as a code word to describe the quantity of marijuana in either pounds or ounces. He also gave the Coalition's telephone number to the informant, and the informant left the Coalition that day without buying any marijuana.

During the next week, the informant made several telephone calls to the Coalition in an attempt to arrange a second meeting when he could make the marijuana purchase. DCI agents recorded each of the calls. Appellant answered the first call, and, in response to the informant's statement that he was "[j]ust looking for some groceries," "[m]aybe 'bout like a half pallet or a quarter pallet," Appellant stated that her husband was not there but that he would be back in about forty-five minutes and that "he [had] talked to that guy that ha[d] those groceries ... on the pallets." The informant agreed to call back later as his "cupboards [were] running low, and [he would] need to get some groceries quick."

Appellant also answered the second call from the informant in which she told the informant that her husband was not available but that they had gotten "that pallet pulled together for [him]. That half pallet." She advised the informant that the pallet was "in the back of the truck" and on its way to the Coalition and that he should "gather up and come down." At that point, the informant informed Appellant that the grocery bill was too high and that he needed to wait for someone from Sheridan to arrive with a little more money before he could pick up his groceries.

Appellant's husband answered the last two calls, during which he and the informant arranged the details for a second meeting when they planned to complete the marijuana sale. In both calls, the informant and Appellant's husband used the same code words to refer to quantities of marijuana. In the recording of the last call, Appellant can be heard in the background, helping to make arrangements for picking up the informant and bringing him to the Coalition for the sale. After some discussion took place between Appellant and her husband as to the locations of the Motel 6 where the informant was staying and a nearby convenience store, Appellant's husband instructed the informant to start walking toward the convenience store where Appellant would meet him to give him a ride to the Coalition.

Appellant picked up the informant and brought him to the Coalition for the second meeting with her husband. On the way to the Coalition, Appellant became nervous when she spotted several vehicles which she suspected were undercover police vehicles. The informant was wearing a concealed wireless microphone, and DCI agents recorded the conversation which occurred between the informant, Appellant, and Appellant's husband after Appellant and the informant arrived at the Coalition. Appellant's husband told the informant that he was nervous because a strange vehicle had parked nearby just as Appellant and the informant had arrived. He lifted the informant's shirt and searched him for a microphone, but he was unable to detect the microphone. He also asked Appellant to drive around the block to see if any cars were following her. Appellant's husband was also worried that the office had been "wired" and that he was being "set up," and he gave the informant a note which instructed him not to mention either the product or the price. When Appellant returned, she and her husband began to suspect that Appellant had been followed by DCI vehicles. The meeting ended before a marijuana sale could be made.

The DCI agents who were recording the meeting did not go into the Coalition and arrest the Gilliams at that time. They did not want to make an arrest until they could identify the source of the marijuana, and they did not want to compromise other investigations in which the informant was involved. When Appellant was arrested a few weeks later, she admitted that she knew

what the informant was talking about when he used the code words to refer to quantities of marijuana.

Appellant was charged with conspiracy to deliver marijuana in violation of Wyo.Stat. §§ 35–7–1031(a)(ii) and 35–7–1042 (1994),[1] and she entered a plea of not guilty. A jury trial was held, and the jury found Appellant guilty. The district court sentenced Appellant to successfully complete three years of supervised probation.

### Sufficiency of the Evidence

Appellant contends that the trial court erred by admitting her husband's statements because the statements were hearsay and that these statements did not meet the prerequisites for admission pursuant to W.R.E. 801(d)(2)(E).[2]

Three elements must be demonstrated before a statement can be admitted as non hearsay under Rule 801(d)(2)(E), W.R.E. There must be evidence of a conspiracy; evidence that the declarant and the defendant both were involved in the conspiracy; and a showing that the proffered statements were made during the course of, and in furtherance of, the conspiracy. The first two requirements insure that the statements were in fact made by a co-conspirator, and the last introduces a measure of relevance and trustworthiness.

We previously have held that these elements may be demonstrated by prima facie evidence. We concluded that such a showing is adequate, and we required neither a preponderance of the evidence nor proof beyond a reasonable doubt. In addition, we have recognized that because of the covert nature of the crime of conspiracy, the foundation may be established with circumstantial evidence.

*Jandro v. State,* 781 P.2d 512, 521–22 (Wyo. 1989) (citations omitted).

■ Appellant contends that our prima facie evidence standard of proof violates the United States Supreme Court's ruling in *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), wherein that Court adopted a preponderance of the evidence standard of proof:

> Petitioner and the Government agree that the existence of a conspiracy and petitioner's involvement in it are preliminary questions of fact that, under [F.R.E.] 104, must be resolved by the court. The Federal Rules, however, nowhere define the standard of proof the court must observe in resolving these questions.
>
> We are therefore guided by our prior decisions regarding admissibility determinations that hinge on preliminary factual questions. We have traditionally required that these matters be established by a preponderance of proof.... Therefore, we hold that when the preliminary facts relevant to [F.R.E.] 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence.

483 U.S. at 175–76, 107 S.Ct. at 2778–79. Nothing in *Bourjaily* indicates that the United States Constitution requires the state courts to adopt the preponderance of the evidence standard of proof. *See, e.g., People v. Taylor,* 260 Ill.App.3d 976, 198 Ill.Dec. 175, 178, 632 N.E.2d 234, 237, *appeal denied,* 158 Ill.2d 564, 206 Ill.Dec. 845, 645 N.E.2d 1367 (1994); *State v. Lynn,* 67 Wash.App. 339, 835 P.2d 251, 255 n. 11 (1992). We do not see any need or reason to deviate from our precedent.

■ Appellant asks this Court to adopt the federally preferred order of proof, which would thereby remove the danger of injecting the record with inadmissible hearsay in

1. Section 35–7–1031(a) provides in pertinent part:
 (a) Except as authorized by this act, it is unlawful for any person to ... deliver[ ] a controlled substance.
 Section 35–7–1042 provides in pertinent part:
 Any person who ... conspires to commit any offense under this article ... shall be punished by imprisonment or fine or both....

2. W.R.E. 801(d) states in pertinent part:

 (d) *Statements which are not hearsay.*—A statement is not hearsay if:

 (2) Admission by Party–Opponent.—The statement is offered against a party and is ... (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

anticipation of proof of a conspiracy which may never materialize. In *Jandro,* we stated:

> We recognize that a preferred order of proof may well exist. It is far easier to analyze contentions such as Jandro's when the existence of a conspiracy and membership in it [are] established before any statements of co-conspirators are offered. Nevertheless, we consistently have held that the order of proof relative to the introduction of the statements is not significant if the record does contain facts from which the conspiracy, and the defendant's membership in it, appropriately may be inferred. While the preferred order of proof should be utilized whenever possible, the failure to do so is not reversible error. Jandro has not demonstrated any compelling reason for us to adjust these rulings.

781 P.2d at 522 (citations omitted). We decline Appellant's invitation as we again see no reason to deviate from our precedent.

 Appellant contends not only that a prima facie showing did not exist to permit her husband's hearsay statements to be admitted into evidence but also that the totality of the evidence was insufficient to convict her of conspiracy with her husband to deliver marijuana.

The State satisfies its burden of proof in a conspiracy case involving controlled substances by proving beyond a reasonable doubt that: (1) there existed at least a tacit understanding between the defendant and a co-conspirator to commit an act violative of Wyoming's Controlled Substances Act; and (2) the defendant intended to commit the elements of the offense which was the object of the understanding. Circumstantial evidence may be relied upon to establish a conspiracy due to the covert nature of the crime.

*Wehr v. State,* 841 P.2d 104, 110 (Wyo.1992). It is not necessary to show that the parties to a conspiracy delivered a controlled substance in order to prove that the conspiracy to deliver existed. *Mondello v. State,* 843 P.2d 1152, 1161 (Wyo.1992).

 Our frequently stated standard of review for a sufficiency-of-the-evidence question is not whether the evidence establishes guilt beyond a reasonable doubt for us but rather is whether sufficient evidence forms the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. *Lahr v. State,* 840 P.2d 930, 932 (Wyo.1992).

We hold that the record contains sufficient evidence, aside from the statement's of Appellant's husband, to permit those statements to be admitted into evidence. After thoroughly examining the entire record on appeal in this case and viewing the evidence and appropriate inferences in the light most favorable to the prosecution, we hold that the facts recited above are sufficient to support the jury verdict.

### Instructions

 Appellant contends that she was denied the right to present her theory of the case to the jury when the district court refused to give her three proposed jury instructions which stated the elements of the offense.

 A defendant has the right to have instructions on her theory of the case presented to the jury when the proposed instructions sufficiently inform the jury of her theory of defense and when competent evidence supports the law expressed in the requested instructions. *Amin v. State,* 811 P.2d 255, 261 (Wyo.1991). The trial court may, however, properly refuse to give a requested instruction, even though it is correct, when other instructions have been given which sufficiently cover the principles which are being offered in the requested instruction. *Jennings v. State,* 806 P.2d 1299, 1305 (Wyo.1991); *Oien v. State,* 797 P.2d 544, 548 (Wyo.1990).

The three instructions offered by the defense stated:

### INSTRUCTION NO. ——

YOU ARE INSTRUCTED that the elements of the offense that the Defendant is charged with are as follows:

1. That on or about March 22, 1993, through March 29, 1993,

2. In Natrona County, Wyoming,

3. The Defendant, Charis Gilliam, and one or more persons,

4. agreed to deliver a controlled substance, to wit, marijuana.

5. That Charis Gilliam knew at least the essential objectives of the alleged conspiracy,

6. That Charis Gilliam knowingly and voluntarily became a part of the alleged conspiracy, and

7. That the alleged co-conspirators were interdependent.

If you find from your consideration of all the evidence that any of these elements have not been proven beyond a reasonable doubt, then you should find the defendant not guilty.

If, on the other hand, you find from your consideration of all of the evidence that each of these elements has been proven beyond a reasonable doubt, then you should find the defendant guilty.

### INSTRUCTION NO. ——

YOU ARE INSTRUCTED that the conduct of the alleged co-conspirators[ ] may be diverse and far-ranging, but it must be interdependent in some way. Interdependence is present when each alleged co-conspirator depends on the operation of each link in the chain to achieve a common goal. In essence, the defendant's action must facilitate the endeavors of other alleged co-conspirators or facilitate the venture as a whole.

A single conspiracy does not exist solely because many individuals deal with a common central player; they must be interconnected in some way. The government must prove beyond a reasonable doubt that the alleged co-conspirators intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

### INSTRUCTION NO. ——

YOU ARE INSTRUCTED that to prove the existence of the conspiracy charged in the Information, the government must show:

(1) That two or more persons agreed to commit an offense under the Controlled Substances Act.

([2]) That the Defendant knew at least the essential objectives of the conspiracy.

(3) That the Defendant knowingly and voluntarily became a part of it, and

(4) That the alleged conspirators were interdependent.

The trial court gave instructions to the jury which correctly stated the elements of the offense according to Wyoming law. The instructions which were offered by the defense merely restated the elements of the offense. Since those elements had already been included in the other instructions, the trial court properly refused to give the instructions which were offered by the defense. *Johnson v. State,* 872 P.2d 93, 99 (Wyo.1994); *Jennings,* 806 P.2d at 1305.

■ Appellant argues that the trial court should have given her proposed instructions because the instructions explained the interdependence element of the offense as is now recognized in federal courts. She cites *Apodaca v. State,* 627 P.2d 1023 (Wyo.1981), where we stated that we view federal case law which construes the federal controlled substances conspiracy statute as being convincing authority when we are construing § 35-7-1042. 627 P.2d at 1026-27. The facts of this case do not warrant an application of the construction rule which was articulated in *Apodaca.*

■ The interdependence of co-conspirators is one factor we consider when we are determining whether a situation exhibits one conspiracy or several conspiracies. *Bigelow v. State,* 768 P.2d 558, 564 (Wyo.1989). The cases cited by Appellant as being authority for the interdependence element are distinguishable because they all involved more than two co-conspirators and the possibility of several separate conspiracies. *See United States v. Johnson,* 12 F.3d 1540 (10th Cir. 1993); *United States v. Evans,* 970 F.2d 663, 668 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993); *United States v. Fox,* 902 F.2d 1508, 1514 (10th Cir.), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990). The inter-

dependence element is not germane when, as in this case, the evidence reveals only a single two-party conspiracy. *See generally* Note, *Federal Treatment of Multiple Conspiracies,* 57 COLUM.L.REV. 387, 388–93 (1957) (explaining the interdependence element). ·

Since the evidence in this case indicates that only one conspiracy existed, the district court had no reason to give Appellant's proposed instructions which concerned interdependence among the co-conspirators. The district court properly refused to give Appellant's proposed instructions to the jury. *Jennings,* 806 P.2d at 1305; *Oien,* 797 P.2d at 548.

### Conclusion

We have found no error in any of the issues which were raised by Appellant; therefore, her conviction is

Affirmed.

LEHMAN, J., filed a concurring opinion.

LEHMAN, Justice, concurring.

I agree that the record in this case supports the findings made by the majority. I would go further, however, and say in the future when the prosecution intends to offer an out-of-court statement by a co-conspirator, that at a minimum an offer of proof be made to the trial judge who could then determine with some certainty that the elements of W.R.E. 801(d)(2)(E) will be met if the proof is then actually made. *See Jandro v. State,* 781 P.2d 512, 522 (Wyo.1989). The risk we take by not establishing a preferred order of proof is that a co-conspirator's statement will be given to a jury and then it is later discovered that no independent evidence of a conspiracy or the accused's membership in it exists. The result may be a conviction based upon improper evidence or a reversal of an otherwise appropriate conviction.