2006 WY 39

**Brett Patrick DOHERTY, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 05–24.

Supreme Court of Wyoming.

March 31, 2006.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Marion Yoder, Senior Assistant Public Defender.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dee Morgan, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] A jury found Brett P. Doherty guilty of one count of felony possession of a controlled substance, methamphetamine. He appeals from his judgment and sentence alleging insufficient evidence to support the conviction and prosecutorial misconduct. Mr. Doherty also claims the district court improperly denied his request for a new trial and contends that he was denied a fair sentencing hearing. We affirm.

## ISSUES

[¶ 2] Mr. Doherty presents four issues for review:

I.  Was the evidence sufficient to prove [Mr. Doherty's] "actual" or "constructive" possession of methamphetamine and was the jury properly instructed on the crime?

II. Did the prosecutor commit misconduct by "testifying" to facts not in evidence and characterizing [Mr. Doherty] as a liar?

III. Did the trial judge abuse its discretion by denying a motion for new trial due to the prejudice caused by the prosecutor's violation of W.R.E. 404(b)?

IV. Did the argumentative contents of the presentence investigation report and the character-impugning remarks of the prosecutor deny [Mr. Doherty] a fair sentencing hearing?

The State rephrases the issues as:

I. Was the jury properly instructed as to the elements of the crime of felony possession of methamphetamine, and was the evidence sufficient to show [Mr. Doherty] intentionally and actually possessed methamphetamine?

II. Did the prosecutor commit misconduct during closing argument?

III. Did the district court abuse its discretion when it denied [Mr. Doherty's] motion for a new trial?

IV. Did [Mr. Doherty] receive a fair sentencing hearing?

### FACTS

[¶ 3] On May 1, 2004, Mr. Doherty and his friends, Mr. Esterline and Mr. Wolfe, were at the Subway store in Mills, Wyoming, when they were approached by a sheriff's deputy. The deputy was conducting a follow-up investigation related to another case. The deputy asked Mr. Esterline to step outside so that they could speak in private. They went to the parking lot behind Subway. After a few minutes, the deputy reentered Subway to get Mr. Wolfe. Mr. Esterline remained outside. Mr. Wolfe accompanied the deputy to the parking lot where they spoke for a few minutes. The deputy then asked Mr. Wolfe to go back inside to get Mr. Doherty.

[¶ 4] After Mr. Doherty entered the parking lot, the deputy asked him if he had any outstanding warrants. Mr. Doherty replied, "I shouldn't." The deputy, by radio, checked with the communication center regarding the existence of arrest warrants for Mr. Doherty. During this time, Mr. Doherty asked permission to dispose of his ice cream cone. Mr. Doherty walked toward the trash receptacle, but stopped after he realized the deputy was following him.

[¶ 5] The deputy was notified that Mr. Doherty had an active arrest warrant. After that notification, Mr. Doherty became visibly nervous. The deputy directed him to discard the ice cream cone while he watched. He placed Mr. Doherty in handcuffs and conducted a quick pat down search for weapons. During the search, the deputy discovered money and a lighter in Mr. Doherty's front pocket and handed them to Mr. Wolfe. As the deputy did so, Mr. Doherty began to move his leg "like he was trying to shake something out" of his pants. The deputy asked Mr. Doherty to stop. The deputy then advised Mr. Esterline and Mr. Wolfe that they were free to leave. As he was talking to them, the deputy observed Mr. Doherty again moving his leg in an unusual way. He saw a small plastic, zip-lock-type bag on the ground approximately eight inches from Mr. Doherty's left leg. When the deputy picked up the baggie, he noted that it felt warm to the touch. The substance in the baggie was subsequently identified as methamphetamine and weighed 4.97 grams.

[¶ 6] Mr. Doherty was charged with one count of felony possession of methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii) (LexisNexis 2003). He pled not guilty. Prior to trial, Mr. Doherty filed a Demand for Notice of Intent to Introduce Evidence Under 404(b). The State did not respond to the demand or provide any notice of its intent to introduce evidence pursuant to W.R.E. 404(b).

[¶ 7] A jury trial was held and Mr. Doherty testified. The jury returned a guilty verdict. Mr. Doherty subsequently filed a motion for new trial which was denied by the district court. Mr. Doherty was sentenced to a term of 36 to 72 months at the Wyoming State Penitentiary. The sentence was suspended upon the condition that he complete 36 months of supervised probation. One of the conditions of probation required Mr. Doherty to complete the Adult Community Corrections felony program. This appeal followed.

## DISCUSSION

### *Sufficiency of the Evidence*

[¶ 8] Mr. Doherty contends that insufficient evidence was presented to the jury to convict him of knowingly and intentionally possessing a controlled substance. We review claims concerning the sufficiency of the evidence according to the following standard:

We must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. "We will not substitute our judgment for that of the jury, . . . our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did."

*Simmons v. State*, 2003 WY 84, ¶ 28, 72 P.3d 803, 813 (Wyo.2003) (internal citations omitted).

[¶ 9] Three jury instructions and the verdict form are relevant to Mr. Doherty's claim of error. The elements of the crime of possession of a controlled substance were set forth by the district court in Jury Instruction No. 7 which states:

The elements of the crime of Knowingly or Intentionally Possessing a Controlled Substance, to-wit: Methamphetamine, as charged in this case, are:

1. On or about the 1st day of May, 2004;
2. In Natrona County, Wyoming;
3. The Defendant, Brett Patrick Doherty;
4. Did knowingly or intentionally;
5. Possess a controlled substance, to-wit: Methamphetamine;
6. In an amount greater than 3 grams [of] a controlled substance in powder or crystalline form.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶ 10] The district court defined "knowingly or intentionally" in Jury Instruction No. 8 as follows:

YOU ARE INSTRUCTED that an act is "knowingly" or "intentionally" done if it is done voluntarily and purposely; not accidentally, because of a mistake or for some other innocent reason. Whether acts were knowingly or intentionally done must be determined or inferred from all of the evidence in the case. In making that finding you may consider the acts themselves, the manner in which they were done, the means used, and all the circumstances surrounding the acts.

[¶ 11] Jury Instruction No. 9 defined the element of possession. It stated:

You are instructed that "possession," as that term is used in this case, may be of two kinds: Actual possession and constructive possession. A person who knowingly has [direct] physical control over a thing at a given time is in actual possession of it.

A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, is in constructive possession of it.

You may find that the element of possession, as the term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession.

[¶ 12] The verdict form was general in nature and simply stated:

We the jury, duly empanelled and sworn to try the above entitled cause, do find that as to the crime of Knowingly or Intentionally Possessing a Controlled Substance, to-wit: Methamphetamine, in a Powder or Crystalline Form Exceeding 3 Grams, as charged in the Second Amended Information in this case, the Defendant, Brett Patrick Doherty, is:

......  Not Guilty

......  Guilty

[¶ 13]   Mr. Doherty did not object at trial to the instructions or the verdict form. He does not claim in this appeal that the instructions or the verdict form are erroneous. His insufficiency of the evidence argument is twofold. First, he contends that there is a difference in the proof required to establish that he "intentionally" possessed methamphetamine and "knowingly" possessed methamphetamine. He suggests that such difference creates alternative theories for conviction, that it is impossible to tell from the general verdict form which alternative the jurors selected, and that there was insufficient evidence to support a conviction on both alternatives.

[¶ 14]   He makes a similar argument with regard to Jury Instruction No. 9. He contends that Instruction No. 9 contains alternative theories for satisfying the possession element, actual or constructive, and that it is impossible to determine which alternative was selected by the jurors. He contends that there was insufficient evidence to support a conviction on both alternatives.

[¶ 15]   Mr. Doherty relies upon our holding in *Bush v. State,* 908 P.2d 963 (Wyo.1995) and its progeny as support for his position. His reliance is misplaced. Our recent decision in *Miller v. State,* 2006 WY 17, 127 P.3d 793 (Wyo.2006) governs our disposition of Mr. Doherty's claim of error. In *Miller,* we stated:

> Citing to the language of Instruction No. 19, Miller asserts that his convictions cannot stand under the principles espoused in *Bush v. State,* 908 P.2d 963 (Wyo.1995), and its progeny. Miller claims that, because Instruction No. 19 contained three alternative theories for satisfying the delivery element, and because the general verdict form did not specify which alternative the jury based its verdict, sufficient evidence on all three alternatives must exist to sustain his conviction on each count. According to Miller, the evidence supports a finding of an "actual" delivery of methamphetamine to Justin on the dates in question, but fails to show a "constructive" or "attempted" delivery. Miller contends

> that the absence of evidence proving a "constructive" or "attempted" delivery mandates reversal of his convictions. Miller misreads the holding of those cases.

> In the *Bush* line of cases, we held that when a crime may be committed in alternative ways, and the jury is instructed on each alternative and returns a general verdict of guilt, the verdict must be set aside unless sufficient evidence exists to support a finding of guilt as to each alternative. *Bush,* 908 P.2d at 966–67; *Urbigkit v. State,* 2003 WY 57, ¶ 42, 67 P.3d 1207, 1224 (Wyo.2003); *May v. State,* 2003 WY 14, ¶ 13, 62 P.3d 574, 579 (Wyo.2003); *Tanner v. State,* 2002 WY 170, ¶ 8, 57 P.3d 1242, 1244 (Wyo.2002); *King v. State,* 2002 WY 27, ¶ 24, 40 P.3d 700, 706 (Wyo.2002). The holding of those cases pertain[s] to elements instructions which quote directly from a criminal statute containing alternative grounds for conviction of the crime charged. For example, *Bush* and *Tanner* concerned Wyoming's burglary statute, Wyo. Stat. Ann. § 6–3–301(a) (LexisNexis 2005). In each case, the jury was instructed that it could find the defendant guilty of the crime of burglary if the evidence showed he entered a building without authority with the intent to commit larceny or the intent to commit a felony. Because the evidence was not sufficient to show entry with the intent to commit both larceny and a felony, we reversed the burglary conviction in each case.

> The problem that existed in *Bush* and the other cases, however, does not exist in this case. Here, the elements instruction given to the jury on the charged offense did not contain alternative elements upon which Miller's convictions could be based. Miller's jury was only required to determine if the evidence proved Miller delivered a controlled substance to Justin Miller, nothing more. Instruction No. 19 merely defined the term "deliver" and did not have the effect of charging an alternative ground for conviction. *Bush* and its progeny simply are inapplicable to the definitional instruction given in this case.

*Id.,* ¶¶ 24–26 (footnote omitted).

[¶ 16]   We find in this case, as we did in *Miller,* that the problem identified in *Bush* is

not present. The elements instruction did not contain alternative elements upon which Mr. Doherty's conviction could be based. The term "knowingly or intentionally" as defined by Jury Instruction No. 8, required the jury to find that Mr. Doherty possessed a controlled substance "voluntarily and purposely not accidentally, because of mistake or for some other innocent reason." Jury Instruction No. 9 merely defined the word possession. Pursuant to the instruction, possession could be "actual" or "constructive." Either would suffice to constitute possession. The use of the terms "actual" and "constructive" did not "have the effect of charging an alternative ground for conviction." *Miller*, ¶ 26.

[¶ 17] Our review of the record reveals sufficient evidence from which the jury could have found beyond a reasonable doubt that Mr. Doherty possessed a controlled substance as charged. Methamphetamine was discovered inches away from Mr. Doherty after he made several unusual movements with his leg. The baggie containing the methamphetamine was warm to the touch. Mr. Doherty was under arrest and was aware he would be taken to jail giving him motive to dispose of the substance. Reasonable inferences from this evidence support the jury's verdict.

### Prosecutorial Misconduct

[¶ 18] For his next claim of error, Mr. Doherty asserts prosecutorial misconduct occurred during closing arguments because the State: (1) argued facts not in evidence; (2) implied that Mr. Doherty was a liar; (3) misstated the law and impermissibly shifted the burden to Mr. Doherty to prove his innocence; and (4) improperly testified to an ultimate fact. No objection was made to the State's closing argument at trial.

The general rule in Wyoming is that a failure to interpose a timely objection to improper argument is treated as a waiver, unless the prosecutor's misconduct is so flagrant as to constitute plain error, requiring reversal. A plain error analysis requires the appellant to demonstrate the violation of a clear and unequivocal rule of law, clearly reflected in the record, result-

ing in the abridgment of a substantial right of the party to his material prejudice. We are reluctant to find plain error in closing arguments "lest the trial court becomes required to control argument because opposing counsel does not object."

*Helm v. State*, 1 P.3d 635, 639 (Wyo.2000) (internal citations omitted). We measure the propriety of closing arguments in the context of the entire argument and compare them with the evidence produced at trial. *Wilks v. State*, 2002 WY 100, ¶ 26, 49 P.3d 975, 986 (Wyo.2002). "[U]nless a reasonable probability exits, absent the error, that the appellant may have enjoyed a more favorable verdict," we will not reverse the conviction. *Mazurek v. State*, 10 P.3d 531, 542 (Wyo.2000).

[¶ 19] First, Mr. Doherty asserts that the State impermissibly argued facts not in evidence during closing argument. He cites to the following portion of the State's closing in support of his claim:

People who crave methamphetamine do not go around throwing $400 bags of methamphetamine into the alleys behind Subway. . . .

Folks, when methamphetamine becomes part of your life, it becomes your life. There is nothing you will not say or do. Counsel can say, well, it wasn't found on his person. Folks, if the methamphetamine had been found in his shirt pocket, the defendant would have come in here and said, you know, I borrowed that shirt from somebody. I mistakenly picked it up at the park after throwing a Frisbee; . . .

It doesn't matter, ladies and gentlemen. There is no tale that is too tall to tell. There is no person too sacred to lie to or about if methamphetamine has become part of your life. There is no person or possession you will not sacrifice in order to protect yourself and your drugs even if it means taking the stand and lying to 12 jurors of your peers.

[¶ 20] We agree with Mr. Doherty that no evidence was introduced at trial concerning the general habits and characteristics of methamphetamine users. Although wide latitude is allowed in discussing inferences to be drawn from the evidence, prose-

cutors must limit their closing arguments to commenting on the evidence. *Condra v. State,* 2004 WY 131, ¶ 22, 100 P.3d 386, 392 (Wyo.2004). While we find the prosecutor's comments troubling, they are not sufficient by themselves to warrant reversal. Even if the comments were improper, Mr. Doherty must also establish that he was materially prejudiced by the error. He has failed to do so.

[¶ 21] The record reflects that defense counsel endeavored to utilize the prosecutor's comments to the advantage of Mr. Doherty. During closing argument, defense counsel stated:

> And [prosecutor] wants you to believe that these people have methamphetamine, they're going to do anything they can possibly to keep it until the last possible moment. They live for it. They're going to hide it. Well, that may be true, I don't know, but let's take that a little bit further. If that is true and he's out there pounding on the podium saying that's what's going to happen, ask yourself this. Mr. Doherty is in Subway. The officer comes in. He sees Deputy Hotard wants to talk to his friends. The light should go on if he's got methamphetamine in his pocket, uh-oh.
>
> Deputy Hotard walks out of the building leaving Mr. Doherty alone in there with Mr. Wolfe. What do we know? We know Mr. Doherty goes to the vehicle. Common sense should tell you, well, if he's so worried about getting rid of it, what a great place to get rid of it. Deputy Hotard is not paying any attention to him. He could have left it in the car. They want you to believe that he just keeps it on him and heads back out there.
>
> Well, what else do we know? He's in the restroom when Rusty Wolfe comes and knocks on the door. Doesn't say, Hey, Joe Bob wants to talk to you out here; he says, the cop wants to talk to you. Well, holy cow, a cop wants to talk to me; I've got meth on me. What a great place to leave it, in the bathroom. I'll come back for it. Common sense will tell you he would have left it there.

In light of Mr. Doherty's failure to object to the statements and defense counsel's efforts,

as a trial tactic, to utilize such comments to benefit Mr. Doherty, we are unable to find any prejudice to Mr. Doherty and therefore reject Mr. Doherty's claim of plain error.

[¶ 22] We must also reject Mr. Doherty's remaining allegations of prosecutorial misconduct. Mr. Doherty has failed to properly cite to the record in his argument to enable us to identify the offending prosecutorial statements. W.R.A.P. 7.01(f)(1); *Bhutto v. State,* 2005 WY 78, ¶ 44, 114 P.3d 1252, 1268 (Wyo.2005) (discussing the lack of detailed analysis of particular facts alleged to be prejudicial). To the extent that we are able to glean the basis of Mr. Doherty's contention, we are unable to find a violation of a clear and unequivocal rule of law or prejudice to Mr. Doherty. For example, Mr. Doherty contends that it was error for the prosecutor to refer to him as a "liar." We have previously recognized that such a reference does not constitute plain error when the evidence supports a reasonable inference:

> We have previously analyzed similar statements. In *Barnes v. State,* 642 P.2d 1263, 1265–66 (Wyo.1982), we said "calling a defendant a thief and a liar may not be in good taste" but, when the evidence supports a reasonable inference that such is in fact the case, it does not constitute reversible error to argue the question. In *Tennant v. State,* 786 P.2d 339 (Wyo.1990), we considered a prosecutor's reference to a defendant as a leech, bloodsucker, and predator on society and the prosecutor's suggestion that perhaps next time the defendant could choose crippled children as his victims. We concluded that, although the prosecutor's remarks were unprofessional, they did not fit within the kind of statements this Court has deemed prosecutorial misconduct under the plain error analysis. 786 P.2d at 346.

After reviewing the prosecutor's closing argument, we conclude his remarks were made to highlight the way Lane's statements changed over the course of his several interviews with the police and to emphasize the fact that the physical evidence was not consistent with Lane's version of the events. Although the prosecutor's repeated labeling of Lane as a liar might

have been in bad taste, the evidence supported the reasonable inference that such was the case. The references, therefore, did not rise to the level of plain error. *Lane v. State,* 12 P.3d 1057, 1064 (Wyo.2000). On cross-examination, Mr. Doherty admitted that he lied to Deputy Hotard concerning his outstanding warrant. This admission is sufficient to justify the State's comment. Additionally, the evidence adduced at trial shows the methamphetamine was discovered inches away from Mr. Doherty after he made several unusual movements with his leg. The baggie containing the methamphetamine was warm to the touch. Mr. Doherty testified that the methamphetamine was not his. The State is permitted to emphasize the fact that the physical evidence is inconsistent with the defendant's version of the events. *See, e.g., Lane,* 12 P.3d at 1064.

[¶ 23] Mr. Doherty has failed to provide record support for his other contentions regarding prosecutorial misconduct that would establish that the prosecution misstated the law, shifted the burden of proof to Mr. Doherty, or improperly testified to an ultimate fact. He has also failed to establish prejudice associated with such allegations. Merely asserting prejudice without a proper showing is not enough to meet the plain error standard. *Bhutto,* ¶ 44 (holding that bald assertions, in lieu of factual presentation from the record, are not enough to show prejudice).

***Motion f or New Trial***

[¶ 24] Decisions to grant or deny a motion for new trial are reviewed under our abuse of discretion standard. *Burton v. State,* 2002 WY 71, ¶ 12, 46 P.3d 309, 313 (Wyo.2002). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986).

[¶ 25] Mr. Doherty contends that the district court abused its discretion in denying his motion for a new trial. He claims that the State elicited improper W.R.E. 404(b)[1] testimony from Mr. Doherty concerning his prior contacts with law enforcement:

[PROSECUTOR]: And I think you told us on direct that you knew you did have outstanding warrants?

[MR. DOHERTY]: Yes.

[PROSECUTOR]: It really wasn't a *might,* you knew you had an outstanding warrant?

[MR. DOHERTY]: Yes.

[PROSECUTOR]: And that's why you wanted to throw your ice cream cone away?

[MR. DOHERTY]: Yes.

[PROSECUTOR]: I think you said because you knew you were going to jail?

[MR. DOHERTY]: Yes.

[PROSECUTOR]: So your contact with Mr. Hotard was not the first time that you had had any contact with a law enforcement officer, was it?

[MR. DOHERTY]: No.

[DEFENSE]: Your Honor, I'm going to object at this point. Can we approach?

(Emphasis in original.) In response to the objection, the State explained that it was attempting to prove Mr. Doherty's familiarity with law enforcement procedures in an effort to establish a motive for Mr. Doherty to dislodge the methamphetamine from his person. Defense counsel responded, stating that the questioning was getting "dangerously close" to inadmissible 404(b) evidence. The district court found the question to be improper, sustained the objection, and struck the answer from the record.

[¶ 26] Even if the questions were improper pursuant to W.R.E. 404(b), Mr. Doherty has failed to establish prejudice. On direct examination, Mr. Doherty testified that he knew he had an outstanding warrant and was going to jail. Mr. Doherty's testimony im-

---

1. W.R.E. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to ·prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

plies that he had prior contact with law enforcement. A similar question asked on cross-examination can hardly be said to have had a prejudicial effect.

[¶ 27] During the hearing on the motion for a new trial, the district court determined that no prejudice resulted from the State's question. The court stated:

> In the context of the entire trial, the prejudicial effect of this one fairly minor evidentiary matter in my opinion would have little or no effect. And to the extent that it may have had some effect, I do feel that the jury would have complied with the directions that were given I think in the preliminary jury instruction and then later in the instruction before the case was submitted to them, that from time to time there would be objections and there would be rulings that they would need to understand were within the province of the Court and that they were to disregard any evidence that was ordered ... to be subject to objection and being stricken.

■■■ [¶ 28] A presumption exists that a limiting instruction can cure prejudice caused by references to prior bad acts. *Ramirez v. State*, 739 P.2d 1214, 1220 (Wyo.1987). The district court gave Instruction Nos. 2 and 4, both of which instructed the jury to disregard any evidence that was ordered to be stricken. We presume that the jury followed the instructions. *Miller*, ¶ 18. The trial judge was satisfied that no prejudice resulted and we will not second guess that determination on appeal. *Ramirez*, 739 P.2d at 1220. We find no abuse of discretion in the district court's denial of the motion for new trial.

### Sentencing Hearing

[¶ 29] In his final issue, Mr. Doherty contends that he was denied a fair sentencing hearing. Mr. Doherty was convicted of felony possession of a controlled substance which carries a maximum sentence of seven years. Wyo. Stat. Ann. § 35–7–1031(c)(ii) (LexisNexis 2003). He was sentenced to a suspended term of 36 to 72 months in the Wyo-

ming State Penitentiary conditioned upon successful completion of supervised probation and residency at Adult Community Corrections. Mr. Doherty acknowledges that his sentence was well below the statutory maximum and that his sentence could have been less favorable. Nevertheless, he argues that both the writer of the presentence investigation (PSI) report and the prosecutor made unnecessary comments and remarks impugning his character. He claims that these remarks were so unwarranted and unprofessional that they tainted his sentencing.

■■■■ [¶ 30] We review sentencing decisions under our abuse of discretion standard:

> "Sentencing decisions are normally within the discretion of the trial court. A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. An error warrants reversal only when it is prejudicial and it affects an appellant's substantial rights. The party who is appealing bears the burden to establish that an error was prejudicial."

*Bitz v. State*, 2003 WY 140, ¶ 7, 78 P.3d 257, 259 (Wyo.2003) (internal citations and quotation marks omitted). Mr. Doherty relies upon the principle that, in sentencing, due process provides a right to be sentenced only on accurate information. *Manes v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo.2004). To demonstrate a violation of this right, he must show a "manifest injustice from the inclusion of the statements" and he must "demonstrate that the trial court relied upon the statements in sentencing" him. *Mehring v. State*, 860 P.2d 1101, 1117 (Wyo.1993).

■■■ [¶ 31] First, Mr. Doherty claims that the PSI writer improperly accused him of lying to the evaluator who performed the Addiction Severity Index (ASI) assessment.[2]

---

2. As a convicted felon, Mr. Doherty was required to receive a substance abuse assessment pursuant to the Addicted Offender Accountability Act. Wyo. Stat. Ann. § 7–13–1302 (LexisNexis 2003).

A substance abuse assessment "means an evaluation conducted by a qualified person using practices and procedures approved by the department of health to determine whether a person

The writer suggested that Mr. Doherty "obtain a new substance abuse evaluation due to his dishonesty during the ... first assessment, and the evaluator should be provided with the Defendant's accurate substance abuse history prior to the interview." Defense counsel objected during the sentencing hearing:

> [The writer] in her recommendation section basically accuses Mr. Doherty of lying to the substance abuse provider who did the ASI. These have been a problem in my opinion where we get the information in the ASI, and then apparently the PSI writer gets other information and then makes a judgment call that the person is lying.
>
> I don't know that under 7–13–1301 anything other than whether there's a need for treatment and a level of treatment services required should be contained in the PSI instead of all of the other information that the ASI contains. Basically what I'm saying is the recommendation of the PSI should be whether there's a need and what that need is. The other information in my opinion is confidential and is not needed for the Court to consider that. And so that would be my comment on that, Your Honor.
>
> COURT: Okay. Your comment is concerning, and I will consider your argument and point of view on that matter.

[¶ 32] Second, Mr. Doherty claims that the prosecutor's argument was improper. At the time of sentencing, Mr. Doherty also had a misdemeanor possession charge pending. The prosecutor referred to the PSI writer's comments and Mr. Doherty's criminal history, including the pending charge:

> One of the things that I've, I think, consistently argued to this Court when we consider a defendant's chances for consideration of supervised probation is the acceptance of responsibility. Without owning up to a problem, you're never going to solve the problem.... And Mr. Doherty has never owned up to this problem.
>
> Even in the PSI, Your Honor, he still maintains that the deputy just happened to put him—place him that night somewhere where somebody had dropped five grams, $4– or $500 worth of methamphetamine right below his leg. The jury rejected that, Your Honor. The jury found beyond a reasonable doubt that that defense didn't work. It didn't add up. It wasn't plausible. And yet even to this day, Your Honor, Mr. Doherty is still maintaining that position.
>
> ... So Mr. Doherty has never owned up to his criminal behavior.
>
> And I think the point that the probation—that the PSI writer is trying to make is that he really doesn't own up in his report to the ASI writer as to his involvement with controlled substances. In fact, although the ASI writer states on page 7 that this is based on information provided by the client and then at the bottom of that same page, she reaches the conclusion that Brett has no significant substance abuse problem at this time even though as [the PSI writer] points out, he has two prior convictions for controlled substances plus this one, plus another one that's pending.
>
> Whose responsibility was that to bring to the ASI writer? It was Mr. Doherty. But he doesn't own up to that problem either, Your Honor. He doesn't accept the responsibility for his criminality, and he doesn't accept the fact that he apparently has a problem with controlled substances.
>
> Your Honor, the State recommends that he be sentenced to the Wyoming State Penitentiary for a period of 30 to 60 months. This is an ongoing problem with Mr. Doherty. And the fact that he shows no remorse, no acceptance of responsibility demonstrates that there really is very little hope that he is going to successfully complete probation.

Mr. Doherty claims it was error for the prosecutor to argue that he failed to take responsibility. Specifically, he challenges the reference to the pending charge, claiming that he pled not guilty pursuant to his constitutional right and that no negative connotation should be attributed to an unproven and contested charge. Additionally, he implies

has a need for alcohol or other drug treatment and the level of treatment services required to treat that person[.]" Wyo. Stat. Ann. § 7–13–1301(a)(v) (LexisNexis 2003).

that the prosecutor's argument only emphasized the problematic portions of the PSI to which he had objected.

[¶ 33] At the hearing, defense counsel argued for a term of probation and voiced no objection to the prosecutor's remarks, other than to characterize them as improper for suggesting that Mr. Doherty be punished for exercising his right to trial. Although the district court found both arguments persuasive, it ultimately rejected the State's recommendation for a prison sentence and the defense's request for straight probation.

[COURT]: And I would say that as I see it, it's a real close call as to whether you're deserving of a sentence to the Wyoming State Penitentiary with a recommendation for a treatment program there. I think the opinion of the Presentence Investigation writer as I see it is very thorough and is right on. And since this is a first felony offense, I'm basically going to adopt that recommendation for a suspended sentence and a probationary term with a requirement that you complete the ACC program.

[¶ 34] We conclude that Mr. Doherty was not deprived of a fair sentencing. The district court agreed to consider Mr. Doherty's point of view regarding the comments in the PSI concerning the ASI. Mr. Doherty has not demonstrated that the district court based its decision upon that portion of the report to which he objected. The writer's comment "merely summarized what was apparent elsewhere in the report and provided the rationale for the agent's sentencing recommendation." *Janssen v. State*, 2005 WY 123, ¶ 18, 120 P.3d 1006, 1011 (Wyo.2005). Apart from the writer's evaluation, the criminal history, as documented in the PSI, supported the district court's conclusion that Mr. Doherty had "difficulties with substance abuse." Additionally, Mr. Doherty has failed to demonstrate that the PSI writer's criticism of the ASI assessment impacted the sentencing decision. The district court ordered the treatment recommended by the ASI evaluator—participation in a Thinking Errors Class dealing with addiction. Contrary to the PSI recommendation, the Court did not order a supplemental ASI assessment.

[¶ 35] Additionally, Mr. Doherty has failed to demonstrate that the prosecutor's comments amounted to manifest injustice. He argues that only proven, documented offenses, i.e. convictions, should be admitted at sentencing. However, the district court is permitted to consider a defendant's criminal background and his character when exercising its discretion in imposing a sentence. *Mehring*, 860 P.2d at 1116. In evaluating character, it may consider a broad range of reports and information. *Id.*

In imposing sentence, the trial court is permitted to go beyond the record to consider the defendant's past conduct and activities including evidence of crimes for which charges were filed but no conviction resulted. The scope of inquiry may include the factual basis of dismissed charges as well as hearsay reports implicating the defendant in other crimes if such reports are deemed sufficiently reliable. Such evidence of prior criminal activity is highly relevant to the sentencing decision and may be considered by the court despite the fact that no prosecution or conviction may have resulted.

*Id.* at 1117 (internal citations and quotation marks omitted). The pending charge was pertinent to the district court's sentencing decision, and it was listed in the PSI. The prosecutor was allowed to refer to it. Had an objection been made, the charge and its factual basis could have been verified. Additionally, the prosecutor's remarks about needing to "own up" and "take responsibility" were fair arguments, given the evidence adduced at trial and Mr. Doherty's criminal history, neither of which was disputed at the hearing. The prosecutor was explaining why the State was recommending a prison term and considered Mr. Doherty unsuitable for probation.

[¶ 36] More importantly, however, the district court did not ultimately accept the prosecutor's recommended sentence. The prosecutor requested imposition of a lengthy prison sentence. The district court rejected such request and ordered a probationary disposition. Mr. Doherty's contentions that the prosecutor's argument improperly influenced

the district court to impose a harsher sentence than he would have otherwise received constitute mere speculation and conjecture.

[¶ 37] There is sufficient evidence in the record to support the jury's verdict of guilt. Mr. Doherty has failed to demonstrate prosecutorial misconduct constituting reversible error, or an abuse of discretion by the district court in denying him a new trial. Finally, we find that Mr. Doherty did not receive an unfair sentencing hearing. We therefore affirm the Judgment and Sentence entered by the district court.