2008 WY 107

**Kevin K. CALLEN, Sr., Appellant (Defendant)**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0026.

Supreme Court of Wyoming.

Sept. 12, 2008.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; Kirk A. Morgan, Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dana J. Lent, Assistant Attorney General. Argument by Ms. Lent.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Kevin K. Callen, Sr. appeals his conviction for being an accessory before the fact to the crime of arson. He contends his conviction is tainted by erroneous evidentiary rulings and prosecutorial misconduct. We disagree and affirm.

## ISSUES

[¶ 2] Callen presents the following issues for our review:

I. Did the trial court err by admitting hearsay evidence, without making a finding on the record, when the evidence was not in furtherance of a conspiracy under W.R.E. 104 and W.R.E. 801(d)(2)(E)?

II. Did the trial court err when it allowed an expert to give detailed testimony that was neither relevant nor probative of an issue in dispute?

III. Did the cumulative effect of two acts of prosecutorial misconduct prejudice Appellant and deny him of a fair trial?

1. The Powell DCI office was housed in the eastern portion of the Fitch Building.

2. At time of the fire, Sherley and Rosenberger resided at the Park Motel.

3. Wyo. Stat. Ann. § 6–1–201 provides:
 (a) A person who knowingly aids or abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed, is an accessory before the fact.
 (b) An accessory before the fact:
 (i) May be indicted, informed against, tried and convicted as if he were a principal;

## FACTS

[¶ 3] On June 18, 2004, members of the Wyoming Division of Criminal Investigation (DCI) and the Powell Police Department executed a search warrant on the Park Motel in Powell, which Callen managed and wherein he resided. During the course of the search, officers found lab equipment and chemicals used to manufacture methamphetamine, as well as a small quantity of methamphetamine. The evidence was confiscated and stored in what the parties referred to as the Powell DCI building.[1] Callen was later charged with manufacturing methamphetamine. On August 20, 2005, Callen's son was arrested for distribution of methamphetamine following a controlled buy at the Park Motel, and the evidence supporting that charge was also stored in the DCI building. A week later, on August 27, 2005, someone set fire to the DCI building, resulting in the destruction of some of the evidence stored inside.

[¶ 4] The ensuing investigation led to the arrest of Levi Sherley and Josh Rosenberger, who later implicated Callen in the arson of the DCI building.[2] The State ultimately charged Callen under Wyo. Stat. Ann. § 6–1–201 (LexisNexis 2007) with being an accessory before the fact for his involvement in the arson.[3] At trial, the State presented evidence that Callen had orchestrated the arson of the DCI building to destroy the evidence supporting his pending drug charge, as well as evidence supporting the drug charge against his son. Among other things, the evidence showed Callen instructed Sherley and Rosenberger on how to ignite the DCI building, including the accelerant to be used,[4]

(ii) May be indicted, informed against, tried and convicted either before or after and whether or not the principal offender is indicted, informed against, tried or convicted; and
(iii) Upon conviction, is subject to the same punishment and penalties as are prescribed by law for the punishment of the principal.

4. Callen directed the boys to use diesel fuel to set the fire. When the diesel fuel failed to accomplish the task, the boys siphoned gasoline out of a nearby generator and used it to ignite the building.

identified where the drug evidence was kept in the building, directed the boys where they should concentrate their efforts to effectuate his objective, and provided the time line for setting the fire. The jury found Callen guilty on the charged offense, and he was sentenced to a term of imprisonment of twelve to fifteen years. Additional facts will be set forth in our discussion of the issues presented by Callen.

## DISCUSSION

### A. Evidentiary Rulings

*Standard of Review*

 [¶ 5] Decisions regarding the admissibility of evidence are within the sound discretion of the trial court. *Law v. State,* 2004 WY 111, ¶ 14, 98 P.3d 181, 187 (Wyo. 2004). We afford considerable deference to the trial court's rulings and will uphold them if we find they have a legitimate basis. *Id.* On review, our primary consideration is the reasonableness of the trial court's decision. *Martin v. State,* 2007 WY 76, ¶ 20, 157 P.3d 923, 928 (Wyo.2007); *Wilde v. State,* 2003 WY 93, ¶ 13, 74 P.3d 699, 707 (Wyo.2003). If we conclude the trial court erred in admitting evidence, we then must determine if the error was prejudicial, requiring reversal, or whether it was harmless. *Skinner v. State,* 2001 WY 102, ¶ 25, 33 P.3d 758, 766 (Wyo. 2001); *Solis v. State,* 981 P.2d 34, 36 (Wyo. 1999); W.R.A.P. 9.04; W.R.Cr.P. 52. An error is prejudicial if there is a reasonable possibility the verdict might have been more favorable to the appellant if the error had never occurred. *Skinner,* ¶ 25, 33 P.3d at 767. The burden of proving prejudicial error rests with the appellant. *Id.*

*Hearsay Testimony*

 [¶ 6] Callen argues that the trial court erred by allowing witnesses to testify, over his objection, about out-of-court statements made by Sherley and Rosenberger.

Specifically, he takes issue with the following testimony:

—Sherley testified that Rosenberger told him on the night of the arson that "Kevin Callen, Sr. said the burning of the DCI building needed to be done tonight, otherwise it was going to be too late."

—Zach DeHaan, who was present when Rosenberger spoke with Sherley on the night of the fire, testified that he overheard Rosenberger tell Sherley that "they had to do it tonight" because Callen wanted it done "so that evidence would not go through."

—Kayloni Bybee, Sherley's girlfriend at the time, testified she heard Rosenberger tell Sherley a few days before the arson that "[Callen] said it had to be done tonight and that he needed to set the alarm so he could get up"; Rosenberger told Sherley on the night of the arson that "[Callen] said it had to be done tonight, there was [sic] no exceptions"; and Sherley told her that "[Callen] had asked for the DCI building to get burned to get rid of evidence for not only his son, but so that he wouldn't get in trouble." [5]

Callen's challenge to the admission of this testimony appears to be two fold. Grouping the evidence together, he first claims the statements were hearsay and did not meet the requirements for admissibility under W.R.E. 801(d)(2)(E). Second, Callen contends that the trial court erred in admitting the testimony without making an express on-the-record finding that the requirements of W.R.E. 801(d)(2)(E) were satisfied.

 [¶ 7] Under W.R.E. 801(d)(2)(E), a statement is not hearsay if "the statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." In construing this rule, we have stated:

"Three elements must be demonstrated before a statement can be admitted as non hearsay under Rule 801(d)(2)(E), W.R.E.

---

5. Callen also identifies testimony elicited by defense counsel during his cross-examination of Bybee. Error, if any, in the admission of this testimony falls under the umbrella of invited error and, consequently, requires no further consideration. *Martin,* ¶ 34, 157 P.3d at 930–31 (the doctrine of invited error prohibits a party from raising an error on appeal that was induced by the party's own actions).

There must be evidence of a conspiracy; evidence that the declarant and the defendant both were involved in the conspiracy; and a showing that the proffered statements were made during the course of, and in furtherance of, the conspiracy. The first two requirements insure that the statements were in fact made by a co-conspirator, and the last introduces a measure of relevance and trustworthiness. We previously have held that these elements may be demonstrated by prima facie evidence. We concluded that such a showing is adequate, and we required neither a preponderance of the evidence nor proof beyond a reasonable doubt. In addition, we have recognized that because of the covert nature of the crime of conspiracy, the foundation may be established with circumstantial evidence."

*Gilliam v. State,* 890 P.2d 1104, 1107 (Wyo. 1995) (quoting *Jandro v. State,* 781 P.2d 512, 521–22 (Wyo.1989) (citations omitted)). A conspiracy does not have to be charged in order for evidence to be admitted under Rule 801(d)(2)(E). "Where there is concerted action between codefendants, evidence of the declarations of one, during and in furtherance of the common design or plan, is admissible against the other defendants, even though no conspiracy is charged." *Jasch v. State,* 563 P.2d 1327, 1333 (Wyo.1977); *see also Burke v. State,* 746 P.2d 852, 855 (Wyo. 1987).

[¶ 8] Turning to the facts of this case, Sherley testified at trial and reported that Callen was unhappy with DCI because of the drug busts at the Park Motel and wanted the DCI building burned down. He testified they discussed on several occasions various methods to accomplish the task, including the use of diesel fuel as the accelerant. According to Sherley, Callen detailed how to effectuate the burn, and even drew a picture of the area of the building to be targeted. In doing so, Callen specifically targeted DCI Agent Tom Wachsmuth's [6] office because he believed it was where a lot of the evidence pertaining to

his methamphetamine charge, as well as the pending charge against his son, was located. Sherley reported he eventually told Rosenberger of the plan to burn the DCI building, and Rosenberger volunteered to assist in the endeavor. Additionally, Sherley testified they subsequently met with Callen on a couple of occasions to finalize the details of the planned arson and the time line for its completion. On August 27, they put the plan into action.[7]

[¶ 9] Sherley's testimony provided sufficient evidence from which the trial court could reasonably infer that a conspiracy existed among the three men and Callen was the driving force behind the conspiracy and the arson. *See Vlahos v. State,* 2003 WY 103, ¶¶ 27–30, 75 P.3d 628, 636–37 (Wyo. 2003) (the in-court testimony of a co-conspirator is sufficient to establish the existence of a conspiracy and the defendant's involvement therein). To prove a statement was made in furtherance of a conspiracy, it need only be shown that "the statement was intended to advance the objectives of the conspiracy." *Bigelow v. State,* 768 P.2d 558, 564 (Wyo. 1989). Here, there is no doubt that the out-of-court statements of Rosenberger, as testified to by Sherley, DeHaan and Bybee, were made during and in furtherance of that conspiracy. Rosenberger's reports were specifically intended to remind Sherley that the timing of the arson was critical and Callen was growing concerned that, if they delayed any longer, it would be too late. Rosenberger's statements regarding Callen's instructions furthered the objective of burning the DCI building in a timely manner. We find no error in the admission of this evidence.

[¶ 10] Callen also argues that De-Haan's and Bybee's testimony regarding Rosenberger's statements was inadmissible because they were not members of the conspiracy. His argument is unavailing. There is no requirement under the W.R.E. 801(d)(2)(E) or Wyoming case law that a

---

6. Agent Wachsmuth was the lead investigator on the drug cases.

7. Sherley testified that they originally planned to burn the building during the early morning hours of August 25, but they fell asleep and did not wake up in time. Bybee apparently had turned off Sherley's alarm clock.

witness be a member of the conspiracy before he can testify about statements made by participants in the conspiracy. *See, e.g., United States v. Molina,* 75 F.3d 600, 603 (10th Cir.1996); *United States v. Williamson,* 53 F.3d 1500, 1519 (10th Cir.1995).

[¶ 11] Bybee's testimony regarding Sherley's out-of-court statements as to Callen's motive for enlisting Sherley's assistance in burning the DCI building, on the other hand, was clearly hearsay. It was offered for no other purpose than to prove the truth of the matter asserted. However, we find that the evidence was entirely cumulative of Sherley's earlier testimony and, therefore, its admission was harmless.

[¶ 12] We now turn to Callen's contention that the trial court erred in admitting the co-conspirator statements without making formal record findings that the statements satisfied the requirements of W.R.E. 801(d)(2)(E). Callen concedes that this Court has never advanced such a procedural requirement, but asks this Court to adopt the rule espoused in *United States v. Radeker,* 664 F.2d 242 (10th Cir.1981), and later modified in *United States v. Perez,* 989 F.2d 1574 (10th Cir.1993). In *Radeker,* the Tenth Circuit held that it was per se reversible error for a trial court to admit a co-conspirator statement without making express findings that the statements fall within F.R.E. 801(d)(2)(E), even if the defendant did not request such findings. *Radeker,* 664 F.2d at 243–44. Noting the potential for abuse, the Tenth Circuit abandoned the "per se reversible error" rule in *Perez* and substituted a more fair procedure, but one we consider to be cumbersome and inefficient. Pursuant to *Perez,* the appellate court is to treat the trial court's failure to make the required record findings as an abuse of discretion, presume that the challenged out-of-court statement was inadmissible, and then assess whether its admission was harmless error. *Perez,* 989 F.2d at 1581. If the appellate court finds the error harmless, it then affirms the trial

court; if it does not, the case is remanded to the trial court for the limited purpose of making the requisite findings. If the trial court does so, the conviction stands, subject to further review by the appellate court if such review is sought by the defendant. If, however, the trial court determines that the F.R.E. 801(d)(2)(E) factors have not been established, a new trial is ordered. *Id.*

[¶ 13] We recognize the benefits of a trial court setting out on the record its reasons for making a particular evidentiary ruling. However, this Court does not require a trial court to make express findings absent a specific request from one of the parties. We decline to change our procedure under these circumstances. As a matter of course, we review the record to determine whether it contains sufficient evidence from which the existence of a conspiracy and the identity of its members may be inferred. *Gilliam,* 890 P.2d at 1108; *Jandro,* 781 P.2d at 522; *Burke,* 746 P.2d at 855; *Dorador v. State,* 711 P.2d 417, 418–19 (Wyo.1985). This procedure has served us well over the years, and we see no reason to deviate from it now.

*Expert testimony*

[¶ 14] Prior to trial, the State gave notice of its intent to introduce, pursuant to W.R.E. 404(b),[8] evidence pertaining to Callen's pending charge for manufacturing methamphetamine for the purpose of demonstrating that it created a motive for burning down the DCI building. After a hearing, the trial court concluded that proof of Callen's pending criminal charge for operating a methamphetamine lab and DCI's concomitant seizure of evidence relative to that charge was probative of issues pertinent to Callen's arson case. More particularly, the court concluded the evidence tended to show motive, plan, intent or preparation. The court also determined the probative value of that evidence substantially outweighed the danger of unfair prejudice.

8. W.R.E. 404(b) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[¶ 15] During trial, the State called Agent Wachsmuth to show a connection between Callen's drug charge and the arson of the DCI building. Agent Wachsmuth testified that a search warrant had been executed on Callen's residence, and methamphetamine, along with labware, jars, tubing, funnels, iodine, red phosphorous, ephedrine, chemicals, and various liquids commonly used in a clandestine methamphetamine laboratory were confiscated. Agent Wachsmuth explained how the labware and chemicals are used to manufacture methamphetamine and gave a brief description, over Callen's objection, of the chemical process. Agent Wachsmuth further testified that some of the seized items relative to Callen's pending drug charge were being stored in the DCI building at the time of the arson.

[¶ 16] Callen contends the trial court erred in allowing Agent Wachsmuth's testimony. Callen does not challenge the agent's testimony pertaining to his pending methamphetamine charge or the items recovered during the search of his residence. Rather, his complaint concerns the agent's explanation of the procedure for manufacturing methamphetamine. Callen claims the testimony was irrelevant and served no purpose other than to "engender vindictive passions in the jury or confuse or mislead the jury." The State counters that the testimony was relevant to prove both an element of the crime of arson for which Callen was on trial and his motive for committing that crime.

[¶ 17] Evidence must be relevant to be admissible. W.R.E. 402. Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. In criminal cases, "evidence is always relevant if it tends to prove or disprove one of the elements of the crime charged. *Gomez v. State*, 2003 WY 58, ¶ 6, 68 P.3d 1177, 1179 (Wyo.2003) (quoting *Geiger v. State*, 859 P.2d 665, 667 (Wyo.1993)). The test of relevancy is one of reasonableness and common sense, liberally applied to favor admissibility rather than the exclusion of evidence. *Whitney v.*

*State*, 2004 WY 118, ¶ 80, 99 P.3d 457, 484 (Wyo.2004).

[¶ 18] In this case, Callen was charged as an accessory to the crime of first-degree arson, which required the State to prove Callen knowingly aided or abetted another person in the commission of the arson, or that he counseled, encouraged, hired, commanded or procured another person to commit the crime of arson. § 6–1–201(a). Wyo. Stat. Ann. § 6–3–101(a) (LexisNexis 2007) provides that "[a] person is guilty of first-degree arson if he maliciously starts a fire ... with intent to destroy or damage an occupied structure." Through the testimony of Agent Wachsmuth, the State sought to show Callen had the motive and intent to destroy the DCI building. Agent Wachsmuth's testimony describing the chemical and physical process of manufacturing methamphetamine tended to prove that what was alleged to be lab equipment, which was seized from Callen and stored in the DCI building, was actually used in that process. In turn, it showed the equipment was valuable to the State's prosecution of Callen with respect to his drug charge, and its destruction was likely of great importance to Callen. In essence, Agent Wachsmuth's description of the process by which methamphetamine is manufactured tended to assist the jury, as the trier of fact, to better understand the value to both the State and Callen of the items seized in relation to the drug prosecution and, thus, tended to assist the jury to better understand Callen's motivation and intent to have those items and the building in which they were stored destroyed.

[¶ 19] In our view, the challenged testimony was probative to the issue of Callen's guilt, as it provided a foundation connecting Callen's drug charge to his motive for committing the arson. Establishing a solid foundation for that connection was necessitated in this case by the fact Callen defended on the theory that Sherley and Rosenberger burned the DCI building on their own initiative. Agent Wachsmuth's testimony directly refuted that theory of defense by demonstrating that Callen had a compelling interest in having the evidence against him destroyed by

the arson. There was no error in the admission of this testimony.

### B. Prosecutorial misconduct

■ [¶ 20] Callen's final contention of error alleges instances of prosecutorial misconduct. Callen concedes he did not object to these incidents at trial and, consequently, our avenue of review is under the plain error doctrine, which demands: (1) that the record clearly reflect the incidents alleged as error; (2) Callen demonstrate the existence of a clear and unequivocal rule of law which was violated in clear and obvious, not merely arguable, way; and (3) Callen prove the error adversely affected a substantial right which materially prejudiced him. *Evenson v. State*, 2008 WY 24, ¶ 7, 177 P.3d 819, 823 (Wyo.2008); *Lessard v. State*, 2007 WY 89, ¶ 14, 158 P.3d 698, 702 (Wyo.2007); *Talley v. State*, 2007 WY 37, ¶ 9, 153 P.3d 256, 260 (Wyo.2007). To satisfy the prejudice prong, Callen must show there is a reasonable possibility the verdict would have been more favorable to him absent the alleged misconduct. *Talley*, ¶ 9, 153 P.3d at 260; *Skinner*, ¶ 25, 33 P.3d at 767; *Earll v. State*, 2001 WY 66, ¶ 9, 29 P.3d 787, 789 (Wyo.2001).

■ [¶ 21] Callen first complains that the prosecutor committed misconduct while cross-examining Josh Rosenberger by asking him whether other witnesses were lying. The State concedes, and we agree, that the prosecutor's questioning of Rosenberger was improper and constituted misconduct. *Beaugureau v. State*, 2002 WY 160, ¶¶ 17–18, 56 P.3d 626, 636 (Wyo.2002) (asking a witness whether another witnesses is lying is improper and amounts to misconduct). *See also Talley*, ¶¶ 10–12, 153 P.3d at 260–61; *Jensen v. State*, 2005 WY 85, ¶ 20, 116 P.3d 1088, 1095–96 (Wyo.2005). The remaining question is whether Callen has demonstrated material prejudice, requiring reversal of his conviction.

[¶ 22] On this element, Callen offers only a simple statement that the prosecutor's ac-

tions denied him a fair trial. Callen makes no effort to explain, within the context of the record, how the prosecutor's improper questioning of Rosenberger adversely affected the fairness of his trial or the jury's verdict. Needless to say, Callen's mere assertion of prejudice without a factual presentation from the record is utterly insufficient to satisfy his burden under the plain error standard. *Doherty v. State*, 2006 WY 39, ¶ 23, 131 P.3d 963, 971 (Wyo.2006); *Bhutto v. State*, 2005 WY 78, ¶ 44, 114 P.3d 1252, 1268 (Wyo.2005). We therefore summarily reject Callen's complaint.[9]

■ [¶ 23] Callen also accuses the prosecutor of misconduct for making the following comments during closing argument:

Now the judge has instructed you about the concept of reasonable doubt. I want to first discuss that concept. The consent [sic] of reasonable doubt does not mean that you can't have any doubt in your mind, it doesn't mean that you have to manufacture a doubt in your mind, if you feel that—if you feel that it's a difficult thing to convict someone of the crime. It doesn't mean that you have to plug in the evidence that you hear into a mathematical equation and you are going to get reasonable doubt or not reasonable doubt. Reasonable doubt is up to you. It's your—it's your decision whether or not the evidence that's been presented by the State goes up and above and beyond—beyond that reasonable doubt standard.

Callen contends the prosecutor's comments violated the rule against instructing the jury on the meaning of reasonable doubt, as set forth in *Collins v. State*, 854 P.2d 688, 699 (Wyo.1993); *Cosco v. State*, 521 P.2d 1345, 1346 (Wyo.1974); *Bentley v. State*, 502 P.2d 203, 207 (Wyo.1972) (holding that it is reversible error to instruct the jury on the meaning of reasonable doubt, reasoning that the term is self explanatory and attempts to define it tend to confuse the jury rather than clarify its meaning). We disagree.

9. We are extremely weary of consistently being presented with a lack of argument in support of a claim of prejudice. *See, e.g., Proffit v. State*, 2008 WY 103, ¶ 36, 191 P.3d 974 (Wyo.2008); *Pendleton v. State*, 2008 WY 36, ¶ 17, 180 P.3d 212, 218 (Wyo.2008); *Rion v. State*, 2007 WY 197, ¶ 3, 172 P.3d 734, 736 (Wyo.2007); *Gabbert v. State*, 2006 WY 108, ¶ 22, 141 P.3d 690, 697 (Wyo.2006); *Doherty*, ¶ 23, 131 P.3d at 971.

[¶ 24] Considering the prosecutor's comments as a whole and in the context of the entire closing argument, as we must, *see Talley*, ¶ 9, 153 P.3d at 260, we do not construe the comments as an improper attempt to define reasonable doubt for the jury. The prosecutor merely explained to the jurors that, while the term "reasonable doubt" had no formulaic definition, it was not the same as not having "any doubt in your mind." The prosecutor made clear that it was within the jurors' exclusive province to determine what reasonable doubt meant in assessing Callen's guilt or innocence; he did not provide a formula or other guiding principles to assist the jury in deciding whether or not reasonable doubt existed. In our view, the prosecutor's statements simply attempted to convey to the jury the State's burden of proof, that reasonable doubt did not refer to a total absence of doubt, and that it was the jurors' province and duty to decide whether or not the State had met its burden of demonstrating Callen's guilt beyond a reasonable doubt. We find no transgression of a clear and unequivocal rule of law and, accordingly, no plain error.

## CONCLUSION

[¶ 25] We have found no reversible error in any of the issues raised by Callen. Affirmed.